This is a suit for damages arising out of an automobile accident which occurred on May 23, 1940, on the Airline Highway at its intersection with Hebert Road near Norco, Louisiana, when plaintiff's automobile ran off the highway into a ditch. Plaintiff alleges that he was driving his automobile on the Airline Highway in the direction of Baton Rouge following a truck owned by Evans Cooperage Co., Inc.; that, when the truck reached a point near the Hebert Road, which intersects the main highway, he proceeded to pass it; that, while he was in the act of doing so, the truck suddenly, and without warning, turned left into the Hebert Road directly across his path of travel and that, in order to avoid contact with it, he was compelled to swerve his automobile to the left and run into a ditch on the upper side of the Hebert Road. He further alleges that, as a result of the accident, his automobile was damaged to the extent of $253.98; that he received personal injuries consisting of contusions and sprain of his lower back and neck for which he expended the sum of $3 for medical treatment and that he is entitled to recover $1000 for his pain, suffering, mental anguish, etc.
The defendants to the suit are Evans Cooperage Co., Inc., and its liability insurance carrier, Employers Liability Assurance Corp., Ltd. They admit the accident but deny that it occurred in the manner alleged by plaintiff. It is averred, in their answer, that the truck of Evans Cooperage Co., Inc., was being driven by one of its employees towards Baton Rouge on the Airline Highway in a careful and prudent manner; that, upon approaching Hebert Road, the driver slowed down and gave a hand signal of his intention to make a left turn into that road; that, at the time the signal was given, plaintiff was approaching from the rear of the truck at a high rate of speed; that plaintiff completely disregarded the signal given by the truck driver and, continuing at said excessive speed, cut to the left off of the highway onto the gravel road abutting it, skidded for a considerable distance thereon and finally crashed into the ditch which is situated on the upper end of Hebert Road. Defendants further pleaded, in the alternative, contributory negligence on the part of plaintiff as a bar to his recovery.
After a trial in the district court on the foregoing issues, there was judgment in favor of plaintiff for the amount prayed for in the petition. Defendants have appealed.
The scene of the accident, which occurred at about 8:00 o'clock in the morning on a clear day, is the Airline Highway at its intersection with Hebert Road. The Airline Highway is a paved thoroughfare running from New Orleans to Baton Rouge, Louisiana, and, at the time and place of the accident, there were only two traffic lanes, one for traffic proceeding towards Baton Rouge and the other for traffic bound for New Orleans. However, abutting the riverside of the highway, there was a gravel road running parallel with it. This road was subsequently paved and now forms part of the highway. When driving in the direction of Baton Rouge and approaching Norco, there is a side road which connects with, and runs perpendicular to, the highway, known as the "Hebert Road". *Page 744 
Defendant's truck driver, Francis D. Evans (a young man 24 years of age whose evidence was taken out of court as he was a member of the armed forces), testified that, on the morning of the accident, he was driving a 3 1/2 ton international truck, with trailer attached, on the highway in the direction of Baton Rouge; that the trailer was loaded with empty steel drums which he was supposed to deliver to Shell Petroleum Company at Norco; that he was operating the truck and trailer at a speed of between 30 and 40 miles per hour on the right hand or proper lane of the highway; that, when he reached a point about 100 yards from the entrance of the Hebert Road, he slowed down the speed of his truck as it was his intention to make a left turn into the Hebert Road; that, as he slowed down, he put out his hand to indicate that he was going to turn; that, as he did so, he noticed, through his rear view mirror, plaintiff's car approaching from the rear at a high rate of speed; that, when he saw plaintiff's car, it was about 100 yards from the rear of the truck; that he continued to observe it and, upon becoming aware of the fact that plaintiff was not retarding the high speed of his automobile, he waved his hand up and down in the hope that he might attract plaintiff's attention to the fact that the truck was going to make a left hand turn into Hebert Road; that, while he was doing this, he continued to slow down the speed of the truck; that, upon observing that plaintiff was unable to slacken his speed and had lost control of his car, he brought the truck and trailer to a stop near the entrance of Hebert Road; that plaintiff swerved to the left onto the loose gravel, which abutted the highway, where he zigzagged and skidded for a considerable distance and finally ran into the ditch situated on the upper end of Hebert Road.
Plaintiff's account of the occurrence is vastly different from that given by Evans, the truck driver. He says that he was driving his Oldsmobile to Baton Rouge for the purpose of attending one of the sessions of the Legislature; that he was travelling at a speed not in excess of 35 miles per hour; that, on his approach towards the Hebert Road which leads to Norco, he observed defendant's truck with trailer attached about one-quarter to a half mile in front of him; that the truck was travelling at approximately the same speed as his automobile (35 miles per hour); that the truck slowed down upon its approach to the Hebert Road; that, when it reached the entrance of that road, his car was about 35 feet from its rear; that, at that point, the driver of the truck suddenly turned to the left without any warning whatsoever; that he was compelled to swerve to his left onto the gravel road abutting the highway in order to avoid contact with the truck and that he travelled some 15 feet on the gravel part of the road before his car ran into the ditch where it came to rest with its front wheels facing towards New Orleans, or in the opposite direction from the way he had been travelling.
In addition to his own evidence, plaintiff called Dr. J. Earl Clayton as a witness in his behalf. Dr. Clayton operates a sanitarium named "Claytonia" which is located on the east side of the Airline Highway about four or five hundred feet past Hebert Road. He asserted that, on the morning of the accident, he had driven from the sanitarium in his automobile onto the Airline Highway and was proceeding down on the riverside traffic lane thereof with the intention of going to Norco via the Hebert Road; that, as he approached the Hebert Road, he noticed the large truck which was coming up the highway from the opposite direction; that he first gained the impression (because of the fact that the truck was loaded with steel drums) that it was going to turn to its left into Hebert Road but that, as he went on, it appeared to him that the truck was going to continue towards Baton Rouge, inasmuch as its driver did not start a left turn on a wide angle; that, being of this belief, he continued forward and was just about to make a right hand turn into Hebert Road when he noticed that the truck suddenly turned to the left; that, upon seeing the truck make this abrupt turn, he was afraid that he could not make the right hand turn into Hebert Road; that, in view of the situation created by the truck, he decided that it would be dangerous to turn to his right into the Hebert Road and that, instead of doing so, he speeded his car forward on the highway past the front of the truck and the Hebert Road and brought it to a stop in front of the "Spillway Bar" which is located on the riverside of the highway and on the lower (New Orleans) side of Hebert Road. This witness further says that, at the time the truck made the left turn into the Hebert Road, he noticed plaintiff's automobile approaching from the *Page 745 
truck's rear; that plaintiff's car was about 100 feet to the rear of the truck at that moment and that plaintiff was compelled to cut to his left in order to avoid contact with the rear of the truck. The doctor is unable to gauge the speed of plaintiff's car but he says that plaintiff pursued the only course possible because he could not turn to the right as there is a large ditch on that side of the highway; that he could not continue forward as he would have run into the rear of the truck and that, therefore, he had to cut over to the left to avoid a collision with it. While Dr. Clayton is unable to approximate the speed of plaintiff's car, it is evident, from his testimony, that he was of the opinion that the car was being operated at a fast rate — for, he observes, "Well, he was just about one hundred feet behind the truck and I could hear the brakes — when he applied his brakes. I could hear the tremendous noise of the application of the brakes."
The testimony of plaintiff and Dr. Clayton strikes us as being most confusing and we find it well nigh impossible to discern from their statements the underlying cause of the accident. In truth, there is only one point on which they are in absolute agreement — that is, that the truck driver made a sudden left turn into the Hebert Road without previous warning. But where was plaintiff's car at the time this turn was made? According to the allegations of the petition, plaintiff's car was in the act of passing the truck when the abrupt turn was executed. According to plaintiff's statement, his car was 30 to 35 feet to the rear of the truck at that time. And, according to Dr. Clayton, plaintiff's car was 100 feet to the rear of the truck.
It seems obvious to us that plaintiff could not have been passing the truck at the time it executed the left turn for, in such case, his car would have collided head-on with the car of Dr. Clayton, which, according to the doctor, passed the front of the truck from the opposite direction just as the truck turned to the left. It is also difficult to understand how Dr. Clayton's car travelled across the Hebert Road in front of the truck and was able to stop in front of the Spillway Bar (which is on the lower side of the Hebert Road) without coming in contact with plaintiff's car, which, according to the evidence, was skidding and sliding over the loose gravel towards the ditch. Surely, the cars would have contacted each other, if the sudden turn of the truck had been responsible for plaintiff's car leaving the highway. Yet, nowhere in his testimony does plaintiff say that he ever saw Dr. Clayton's car nor does Dr. Clayton explain whether he had crossed the Hebert Road before plaintiff ran his automobile into the ditch on the upper side of that road.
On the other hand, we find the testimony of Evans, the truck driver, to be plausible and that it coincides with the reasonable probabilities of the case. He states that plaintiff was driving his car at such a high rate of speed (60 miles per hour) that he was unable to control its movement. An examination of all of the evidence gives us the same impression, despite plaintiff's statement that he did not exceed 35 miles per hour. Dr. Clayton's evidence sustains this view for, while he is unable to gauge the speed of plaintiff's car with accuracy, he states that plaintiff could not stop when the truck turned left into the Hebert Road and that plaintiff was, at that time, 100 feet to the rear of the truck. It is manifest to us that an automobile which cannot be brought to a stop within 100 feet and which leaves the road out of control, skids on loose gravel for a considerable distance and finally comes to a stop in a ditch, is not being operated in a prudent manner, particularly where its driver has observed a large truck and tractor (which it had been following) slow down at a place at which the driver has reason to believe the truck might turn. Consequently, it is unimportant to determine whether Evans made an abrupt turn into Hebert Road without warning or not — for, assuming that he did and that he was therefore negligent, plaintiff was far enough to his rear to have avoided a mishap if he had been travelling at a reasonable rate of speed. Contributory negligence bars recovery.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be dismissed at his cost.
Reversed. *Page 746