This is a suit for damages resulting from personal injuries sustained by plaintiff as a result of an alleged unprovoked attack upon him by Morgan J. Authement and his brother Farquard Authement, which occurred on Monday, October 23, 1944, out of the place of business of Lapeyrouse Motor Company, on the west of Barrow Street, in the Parish of Terrebonne, a *Page 470 
short distance south of the corporate limits of the City of Houma.
The defendants admit that plaintiff did sustain personal injuries as a result of a fight with one defendant, Morgan J. Authement, but contend that the fight occurred as a result of the aggravation and provocation of plaintiff himself, and that consequently his suit should be dismissed.
On these issues the case was tried and the trial judge, as set forth in a written memorandum of reasons, rendered judgment in favor of plaintiff for personal injuries and damages resulting from the attack in the total sum of $1,975, itemized as follows:
1. Loss of two front teeth................... $1,000.00 2. Replacing teeth .......................... 100.00 3. Medical services ......................... 20.00 4. Cuts, bruises, lacerations, scars .................................. 400.00 5. Loss of time, etc. ....................... 50.00 6. Replacing eye glasses .................... 5.00 7. Pain and suffering ....................... 400.00
The defendants have appealed, and the plaintiff has answered the appeal, praying that the damages awarded be increased to $3,025.
Defendants have filed in this court (1) a motion to expunge the trial court's written memorandum of reasons for judgment, and (2) a motion to remand, which are opposed by exceptions of plaintiff.
[1] The facts concerning or pertaining to the motion to expunge from the record the written memorandum of reasons for judgment by the trial court are that the case was tried and was later argued and submitted to the trial court on April 10, 1945; that on March 1, 1946, for oral reasons assigned, the trial court rendered judgment against the defendants, in solido, for the sum of $1,975; on that same day, in open court, defendants moved for and were granted a suspensive appeal to this court, which appeal was perfected on March 6, 1946, by the filing of a suspensive appeal bond. On April 15, 1946, the transcript of appeal was filed in this court. On October 1, 1946, the trial judge filed with the clerk of the lower court his written memorandum of reasons with the instruction to transmit the original thereof to this court and a copy to each of the attorneys of record, and which reasons for judgment are now a part of the record. The case in this court was fixed for argument for November 8, 1946.
Defendants contend that when these written reasons were rendered, the trial court had completely lost jurisdiction of the case by the perfecting of the appeal, and the filing of the record in this court. In substantiation of their contention, they cite many cases, all holding that once an appeal is taken and perfected by the filing of bond, the trial court is divested of jurisdiction. We are in thorough accord with the holding of these decisions. However, we find these cases and the law which is now well settled by these decisions to be inapposite to the case at bar, for the reason that the act of the trial judge in filing his written reasons for judgment was merely supplementing his oral reasons for judgment and it was not an exercise of jurisdiction of the case. We do not find wherein defendants were prejudiced. See Abood v. Louisiana Oil Refining Corp. et al., La. App., 155 So. 484, and Bates v. Hayden, La. App., 188 So. 170. Therefore, the motion is overruled.
[2, 3] The second motion of appellants is to remand the case for the purpose of taking the testimony of Shelly Martin, plaintiff's brother, and Marcus Dupre, for the purpose of showing that plaintiff had attempted to have these witnesses give false testimony in this case by having them falsely swear that they had witnessed the fight and which they refused to do; in other words, to discredit the plaintiff in the eyes of the court or to impeach his testimony. They have attached the affidavits of these two alleged newly discovered witnesses. After a careful reading of their affidavits, we cannot see the materiality of their evidence in the decision of this case. Furthermore, the plaintiff has annexed to his exception to remand the case the affidavits of seven other persons who would swear that the facts as detailed in the motion to remand, and in the two affidavits sustaining the motion, to be false. There must be an end to litigation, and it *Page 471 
is now well settled that a new trial will not be granted on the ground of newly discovered evidence when this evidence is not material to the issues of the case and only has a tendency to discredit or impeach a witness on the former trial of the case. This motion is denied.
[4] As set forth by the trial judge, it is admitted that Morgan J. Authement and plaintiff were engaged in a fight and that plaintiff suffered injuries, and the disputed facts are whether Farquard P. Authement took part in the fight, and which of the parties was the aggressor.
The evidence shows that the plaintiff and the defendants were both engaged in the passenger bus business, and that plaintiff wrote to the Public Service Commission advising it that Morgan J. Authement was operating a bus between two certain points without a permit, and, contrary to law, and that as a result of this advice from the plaintiff, the Public Service Commission sent two notices to Morgan J. Authement calling attention to the fact that if he was so operating a bus he was violating the law. These notices were sent in June, 1944, at which time Farquard Authement was in the Army, and apparently Farquard Authement, who owned the bus line, knew nothing about such notices until October 21, 1944, when he came home on a furlough. It appears that thereafter he tried to contact Calvin L. Martin, plaintiff, about the notices at his house, but failed to do so. On the day of the fight he and Morgan J. Authement were supposedly at the Chevrolet garage, located across the street from the Lapeyrouse garage, where the fight occurred, to see about parts for Morgan Authement's car, which he had ordered and which he had been advised were received. They saw Mr. Martin, plaintiff, across the street at the Lapeyrouse garage. They thereupon went over to meet him, and according to their testimony, confronted Martin as he was leaving the Lapeyrouse garage, and Farquard Authement presented the notices to plaintiff and an argument ensued. It appears from their testimony that at that moment, Farquard Authement was facing Martin and that Martin became very angered at Morgan Authement for having shown the notice to Farquard, and that, in effect, he threw his glasses down, and thereupon attacked Morgan Authement, and Morgan Authement then gave him a terrific pommelling and beating in defending himself, while his brother stood by and did nothing.
On the other hand, plaintiff testifies that the two Authement brothers came upon him just as he had completed some business with L.E. Lapeyrouse and Eschete and was walking out of the Lapeyrouse garage; that they approached him in a very antagonistic and aggressive manner and that they thereupon both attacked him, knocking his glasses off and inflicting on him severe personal injuries.
The trial judge calls attention to the fact that the only alleged eyewitness to the fight is Louis Landry, but that he cannot accept Landry's testimony because of the unreasonable circumstances connected therewith. He calls attention to the fact that this fight lasted not more than three minutes and that Landry's testimony is that prior to the fight he had been in the Chevrolet garage, and yet did not see the Authement brothers at that time, nor did they see him; that the reason for Landry having gone to the garage, according to his testimony, was to have a flat tire fixed, which tire he had rolled from his brother's home, a quarter of a mile away, and was rolling it back at the time that he noticed the fight. We fully agree with the trial judge that this was a most unusual performance, for the reason that the "flat" he was having fixed had occurred some 25 miles before he arrived at his brother's house, and the normal procedure would have been for him to have driven to the garage with the flat tire. The trial judge also calls attention to the illogical statement of Landry that he heard Martin curse Morgan Authement and witnessed the attack of Martin on Morgan Authement, and the fight, from a point, which, according to his testimony, would be some 200 feet from the scene, and then calmly went away without making any inquiries as to what it was all about, and later, when arriving at his brother's house, merely informing him that he had seen a fight, *Page 472 
without telling him who the combatants were and without his brother asking him who they were, when both were well acquainted with them. It is also shown that Landry never even informed the Authements that he had witnessed the fight, and that it was their attorney who introduced him as a witness. We fully agree with the trial judge that Landry's testimony cannot be believed.
The only other pertinent testimony as to the actual fight is that of Mr. Lapeyrouse and Mr. Eschete, neither of whom witnessed the actual fight, but who testified that just prior to the fight the plaintiff had been in the garage to pay an account, and on leaving spoke to them, leaving by the front door, and about two minutes later returned by the same door; that he was cut, bruised and bleeding; that Lapeyrouse, angered by the affray on his premises, spoke to the two defendants and that defendant Farquard Authement explained that plaintiff had stolen a permit from them and that the beating he had received was only part of what they were going to give him, and that another instalment would be inflicted later down the Bayou Little Caillou, where the parties reside. Both of these witnesses testified that Farquard Authement was the first to enter the building after the affray, and that he was chief spokesman for the defendants. It is also shown that Mr. Lapeyrouse announced his intention of calling the city police, after his conversation with Farquard and, at that moment, the Authements made a hasty departure.
On the testimony of Mr. Martin, the plaintiff, as corroborated by the testimony of Mr. Lapeyrouse and Mr. Eschete, coupled with the circumstances that plaintiff Martin was a robust man of 180 pounds, whereas Morgan Authement is a much smaller man of 141 pounds, the trial judge reached the conclusion that the attack was made as related by plaintiff. The trial judge calls attention to the fact that the defendants and their witnesses assumed an unnatural demeanor on the witness stand, such as being very slow in answering questions, and having them repeated time and again, which convinced him that they were not telling the truth. After a careful reading of their testimony, we, likewise, are of the opinion that they were not truthful.
We, like the trial judge, are of the firm opinion that the assault committed on the plaintiff was premeditated, willful, unprovoked, wanton and malicious and was committed by both defendants.
[5] As to the quantum of damages, the plaintiff suffered the loss of two good teeth; they were severed by the fracture of the alveolar process of the gums by the stomping of plaintiff in the face by defendant Farquard Authement; one of his eyes was blacked; his face was bruised, beaten and cut. Plaintiff was unable to sleep for the first night on account of pains and the doctor had to be called during the night. He was completely unable to attend to his duties and was confined to his home for at least four to six days, necessitating the employment of extra help for two weeks or more at $25 per week, plus board.
Defendants admit that the charges of $125 for medical and dental fees, together with the replacement of the eye glasses, has been proved, but contends that the remainder allowed by the trial court is excessive. After a careful review of the case and considering the injuries inflicted by these defendants upon the plaintiff, we must say that the trial judge was very moderate in his allowance, but we do not find sufficient reason to disturb it by increasing it.
For these reasons, the judgment appealed from is affirmed. *Page 473