LOTTINGER, Judge.
This action arises from a collision between a motorcycle and a passenger car. The scene of the collision is a point opposite the driveway of defendants Nolans, the husband being the owner of the car and the wife being the driver of the car. The driver of the car at the time of the colisión, was in the process of entering her driveway after executing a left-hand turn.
The collision occurred on West College Avenue within the corporate limits -of the City of Lafayette, Louisiana. West College Avenue is a concrete roadway from curb to curb and has ample accommodations for four travel lanes when no cars are parked on the outer lane.
Petitioner avers that on August 2, 1949, at about 6:15 p. m., he was proceeding easterly on West College Avenúe, having entered said avenue at Louise Street, which is alleged to be one block west of the scene of the accident; that he was traveling in the right-hand lane of traffic, the lane nearest the curb, as one travels east thereon, at about 20 miles per hour; that on approaching Agnes Street, one block east of Louise *650 Street, plaintiff noticed several automobiles traveling westerly, or in the opposite direction and on the inside travel lane for westerly traveling vehicles; that plaintiff continued in the said lane of traffic across the intersection of Agnes Street which he traversed on the green light and that almost immediately thereafter a Chevrolet automobile driven by Mrs. Gladys Beadle Nolan, one of the defendants, and wife of defendant James A. Nolan, “which had either stopped or had slowed down behind the traffic approaching from the opposite direction, suddenly and without warning made a left turn directly in the path of petitioner’s motorcycle, causing petitioner to collide with the right rear portion of the Nolan Chevrolet automobile.”
Petitioner alleges that the sole and proximate cause of the said collision was due to the negligence of defendant’s driver. He filed this suit against James A. Nolan, the owner of the car, Mrs. Gladys Beadle, wife of James A. Nolan, and driver of the car, and the General Casualty Company of America, the Nolans’ liability insurance carrier. Plaintiff seeks damages in the sum of $33,082.25, which covers pain and suffering, loss of earnings, and past and future medical expenses. .
Defendant General Casualty Company of America admits that it is the insurance carrier on the Nolan automobile, having issued a public liability insurance policy in the amount of $5,000 for any one person involved in one accident and a property damage insurance policy in.the amount of $5,000.
The Nolans admit the occurrence of the collision. Plowever, they deny all the material allegations of the petition and allege that the accident was due solely to the negligence of plaintiff. They, in the alternative, allege the contributory negligence on the part of plaintiff. Their answer alleges that Mrs. Nolan “was operating the automobile in a westerly direction on West College Avenue at a very careful and. prudent rate of speed when she saw the motorcycle upon which plaintiff was travelling approaching from the west several hundred yards away, and had the plaintiff been proceeding at a reasonable rate of speed, the said Mrs. Gladys Beadle would have had ample time to complete her turn and enter the driveway. The said Mrs. Gladys Beadle had consummated the turn and had proceeded across the travelled . portion of the said highway with only a small portion of the automobile in the parking lane when the motorcycle driven by the plaintiff ran into the right rear bumper of the said James Nolan automobile. That the said Mrs. Gladys Beadle exercised every care and precaution in operating her automobile in strict accordance with all rules and regulations and all principles of fairness and safety; that she was guilty of no negligence of any kind or character in' the operation of the said automobile. That the said Mrs. Gladys Beadle did everything within her power to avoid the collision, but because of the action of the plaintiff, it was impossible to do so.”
The lower court found the proximate and immediate cause of the collision to be the excessive speed at which plaintiff was traveling on his motorcycle, and his failure to keep a proper lookout in the direction in which he was traveling. Judgment below was awarded to defendants, dismissing plaintiff’s claim at his cost. The petitioner has taken this appeal.
■ As is usual in proceedings of this nature, thé evidence adduced is conflicting and irreconcilable. About the only facts admitted by' both parties are the occurrence of the accident, and the fact that petitioner turned around to wave to someone in a maroon automobile shortly before the accident.
There was a considerable -amount of dispute as to whether there was a traffic light at the corner of Agnes Street and College Avenue at the time of .the accident. The defendants claimed that the light was not ‘installed until some time after the accident. The defendants claimed that the light was installed about a month or two after the collision. This fact is testified to by Mrs. Nolan, Mr: Gates and Mrs. Gates. There testimony was strengthened by the testimony of Mr. Curtis' Rhodemaker, the Trustee of Public Property of the City of Lafayette. He testified that he was the party who ordered the installation of traffic *651 signal lights in Lafayette, and that he had, in his office, the records of such instilla-tions. He stated that he ordered the installation of the light at the corner of Agnes Street and College Avenue on October 12, 1949, but that it was not actually installed until October 15 or 16. Mr. Rhodemaker further testified that there was no traffic light at that corner prior to that date.
The petitioner, on the other hand, definitely states that the light was installed prior to the accident. His petition alleges that the light was there on the date of the accident, and his testimony supports this allegation. In support of his contention, he introduced several witnesses, none of whom could give any definite time of the installation. On cross-examination, these witnesses rather weakened in their testimony and admitted that the light could have been installed after the accident.
The presence, or absence, of the traffic light at the intersection of College Avenue and Agnes Street has nothing whatever to do with the collision. It was introduced merely to test the veracity of the witnesses, inasmuch as petitioner had alleged that he had passed through a green light just prior to the accident. We believe that the evidence shows clearly that there was no traffic light at said intersection on the date of the accident, and that it was not installed until the 15th or 16th of October, 1949, as was testified to by Mr. Rhode-maker from his official knowledge. Counsel attempted to discredit Mr. Rhodemaker’s testimony by asking dates of installation of other traffic lights in the city, which dates the witness could not give while on the witness stand. His inability to answer such questions did not, in our opinion, weaken his testimony as it would be almost impossible to remember such dates without referring to the records. Obviously, in anticipation of his testimony, Mr. Rhodemaker had checked his records for the date of installation of the light on the particular corner.
Mr. Gates, testifying on behalf of defendants, placed the scene of the accident about 2% to 3 feet from the south curb of College Avenue. Such would place the major portion of the Nolan car in the driveway at the moment of the impact. In this he is corroborated by Mrs. Gates and Mrs. Nolan. Mr. Gates stated that there was a pile of dirt located in said spot, which obviously was knocked from 'the car as a• result of the impact. This evidence was corroborated by Mr. Harold Abadie, a police officer of the' City of Lafayette. Mr. Abadie did not arrive on the scene of the accident until the car, motorcycle, and petitioner had been removed. The majority of his testimony was correctly objected to as heresay. However, he did testify that he saw dirt on the road, in the southern parking lane near the curb. This portion of his testimony was of his own knowledge, and was, therefore, admissible in evidence.
The testimony of petitioner as respects to which lane he was traveling in just prior to the accident is contradictory. On direct examination he testified, at one time, that he was in the lane nearest the curb, and, at another time, that he was close. to the black center line. His description of the accident, as testified, is as follows:
“I was going down the lane closest to the sidewalk and when I got to Agnes-Street they had three girls in a Kaiser or Frazer, a maroon car, and they tooted the horn and I waved and I didn’t look at them to see who it was. I didn’t pay attention. I passed this car and Mrs. Nolan made a left turn and I didn’t see any signal at all when she gave it. I tried to dodge the car, but they had a bicycle behind the car. I could have missed the car at one time, but I had to cut back to avoid hitting the boy on the bicycle.”
He further testified that he was twenty to twenty-five feet from the car when Mrs. Nolan started to make the left turn, and that he hit the Nolan car in the right rear end; that the location of the impact was the center line of the four lane avenue.
Petitioner testified, on cross-examination that he was in the center of the intersection of College Avenue with Agnes Street when the girls first tooted the horn. He estimated the distance from the center of Agnes Street to the location of the accident at about 80 feet, however, the testimony of defendants’ witnesses set said distance at *652 about'100 feet. Although petitioner claims that he did not look to see who the girls were, he was able to tell that the car was either a Kaiser or Frazer, that it was maroon and was stopped in the center of Agnes Street, and that there were three girls in the front seat. On cross-examination petitioner admitted that he did not see the girls until after they blew. Thus, all the above details as to the make and color of the car, and the number of. .girls therein, were seen by petitioner after he had-passed the center of the intersection of Agnes Street, and during the time that he was traversing the 80 to 100 feet to the point of impact. Certainly some period of time elapsed during which petitioner was ascertaining these details, and even assuming that he was only .going about 20 miles per hour, as petitioner claims, we believe that he failed to look forward until he was at too close a distance from the Nolan car to avoid striking it.
Petitioner further claims that he was about 20 to 25 feet from the car when Mrs. Nolan commenced her turn, at which time he was driving in the extreme south lane of the avenue. Upon seeing her attempting the turn, he cut sharply to his left to avoid her, but had to cut back to avoid hitting a kid on a bicycle, and caught his crashguard on the bumper of the Nolan car. Petitioner stated that he did not believe that he could have gone around the front of the Nolan car. The evidence shows that the only damage to the Nolan car was to the rear right bumper, the rear right fender was not scratched. The car was a 1941 model Chevrolet and we assume that the rear bumper did not curve around the outside of the fender, as they do in the later model cars. Had the accident occurred as testified to by petitioner, we believe there would have been some damage to the fender. To avoid the fender and catch the bumper, it appears to us that the vehicles would have to be at almost right angles to each other.
Mr. Gates testified that he first saw the motorcycle when it was 250 to 300 feet away, on the other side of the-.intersection with Agnes Street. At about this time, Mrs. Nolan put her left hand out .the window, evidently to give a turn signal. She had been proceeding at about twenty miles per hour prior to that time, however, on- putting her hand out the window to give the signal, she slowed, the, speed of the car. This testimony was corroborated by Mrs. Gates and Mrs. Nolan. He testified that petitioner looked to his rear and waved with his left hand to the girls .in the maroon car. According to Mr. Gates, petitioner did not turn around to observe his forward path until just before he struck the Nolan car, at which time he attempted to turn to the left, but was too late. After the impact Mr. Gates followed the motion of petitioner and the motorcycle, as well as he could through the rear window of the car. He stated that he did not see any kid on a bicycle, as was claimed by petitioner. He stated that, after the impact, the motorcycle crossed the street at an angle and stopped abqut 200 feet from the impact. Petitioner was thrown clear of the motorcycle, and turned somersaults across the street, hit the curb, was thrown back into the air, and .ended up between the sidewalk and the street.. He claims to have measured the distance from the impact to where petitioner finally came to rest at about 135 feet. Mr. Gates testified, on cross-examination, that, at the time Mrs. Nolan started her left turn, the motorcycle was about 130 to 150 feet away, and must have been traveling at about 35 miles per ‘ Mir. • ...
Considering the distance that petitioner was thrown after the impact, it seems that immediately prior to the collision, he must have been travelling at a speed far in excess of 20 miles per hour. We believe that his speed must have been closer to 35 miles or better per hour rather than 20, as testified by petitioner. Petitioner claims that the impact caused acceleration of the motorcycle, thus accounting for the distance he and the motorcycle travelled after the accident. However, even assuming that petitioner remained with the motorcycle for 30 to 40 feet after the "collision, as was testified to by petitioner, we do not believe such distance would allow the motorcycle to accelerate to such a speed as to cause him to- be thrown such a distance as the evidence tends to indicate.
*653 An ordinance of the City of Lafayette was introduced into evidence wherein the speed limit in Lafayette was set at 25 miles per hour. The said ordinance further provided that no vehicle was to he driven on the streets of Lafayette at a speed greater than that which is reasonable and proper, having due regard to the conditions existing. The evidence shows that College Avenue is U. S. Highway No. 90, and is a highly travelled street and highway.
It is well settled' in our jurisprudence that a left hand turn is a dangerous maneuver. Such a maneuver is even more dangerous when made on a highly travelled street or highway, especially if such maneuver is made in the center of a block, where it would be less expected than at an intersection. Therefore, it goes without saying that Mrs. Nolan, in turning left into her driveway, was executing an extremely delicate and dangerous maneuver. In making a left turn, the driver of, the,vehicle must see that the way is clear of oncoming traffic so as not to endanger the lives and property of others in such maneuver. However, the party making the turn is not an absolute insurer of the property of others. Volume 2 of Blashfield, Cyclopedia of Automobile Law & Practice, § 1171, page 477, states:
“Reasonable prudence and caution should impel a driver, making a left turn into a private driveway, to signal his intention to turn to other motorists following him. This obligation of signaling may be .fulfilled by the driver extending his hand out on the left side of the car, holding it there until he reaches the turn, so that the other driver, by reasonable diligence, may see it.
“The turning driver, after a proper signal for a left turn and observing nothing that would indicate his signal is not being obeyed, is entitled to assume that other drivers will obey the law and exercise reasonable care.” .
In Capone v. Cotton Trade Warehouses, 215 La. 692, 41 So.2d 505, the Supreme Court held that the driver of a vehicle making a left turn when another vehicle is approaching at a distance of 125 to 150 feet was not guilty of-any negligence, but that the sole and proximate cause of the •accident was the negligence of the driver •of the other vehicle.
In the case of Kelly v. Neff, 14 So.2d 657, 660, originating from the Second Circuit, Court of Appeal, the court pointed out that a driver turning ldft has to be reasonable, but so does the other' operator. In that case, the plaintiff, operator of a truck, sued the operator of a vehicle which rah into the truck as it was turning left. The 'court in permitting recovery to the driver turning ‘ left, said:
“Appellants’ astute counsel stress the well • recognized danger attending execution of a left turn by a motorist and cite and quote ■ from many cases dealing with this question,- with all of which we; are in perfect harmony. Several of the cited cases are from this court. But, it- is also well recognized that a motorist who desires to make a left turn on a city street is not required by law to wait until there• is no traffic in sight before attempting to - do so. He has the unquestioned right to move after he has made a close and careful survey of traffic conditions about him and honestly believes from such survey that conditions zvarrant such action; . in doing so; relying upon the presump-' tion that other motorists in sight are observing and will continue to observe speed limitations. When the motorist acts in such circumstances and a collision occurs because of the excessive speed of the other fellow, the obvious and proximate catise of the accident is the excessive speed. If plaintiff had not the right to undertake the left turn as and when he did, it is improbable he could have done so within a reasonable time because of the usual heavy traffic on the street.”
(Emphasis supplied.)
It is the opinion of this court that, at the time Mrs. Nolan gave signal of her intention to execute a left turn, the motorcycle was in the next block, a distance of some 250 to 300 feet from the Nolan car. We further believe that the motorcycle *654 was some 130' to 150 feet distant when she actually started the turn. The evidence indicates that petitioner whs travelling at a speed of some 35 miles per hour or faster, in excess of the speed laws of the City of Lafayette. The evidence further indicates that the collision took place approximately three feet from the south curb of College Avenue, and that defendant’s car had almost completed its maneuver. We further believe that Mrs. Nolan was reasonable in her belief that she could safely make the turn into her driveway. The evidence fails to prove, by a preponderance thereof, that Mrs. Nolan was guilty of negligence.
Assuming, for the sake of argument, that Mrs. Nolan was guilty of some negligence, we do not believ.e such negligence to be the sole and proximate cause of the accident. Had petitioner been exercising reasonable and prudent care,. he could easily have avoided the collision by slowing his speed. His excessive speed, and the fact that he looked to the rear to wave to others immediately prior to the collision was a contributory factor to the accident and, in our opinion, was a proximate cause of the accident, if not the proximate and sole cause thereof. Petitioner has failed to prove his case, and the judgment of the lower court will be affirmed.
For the reasons assigned, the judgment of the lower court is affirmed, costs of this appeal to be paid by petitioner.
Judgment affirmed.