74 So.2d 316 (1954)
MARTIN
v.
BRUCHHAUS.
No. 3850.
Court of Appeal of Louisiana, First Circuit.
May 31, 1954.
Rehearing Denied September 15, 1954.
Louis D. Curet, Baton Rouge, for appellant.
Percy C. Smith and Herschel N. Knight, Jennings, for appellee.
CAVANAUGH, Judge.
Plaintiff appeals from a judgment in his favor in the sum of $1,200 for damages awarded him for physical pain and suffering, inconvenience and discomfort, and mental pain, anguish and embarrassment as a result of injuries he alleges were suffered by him in an automobile collision occurring at the intersection of Highway 190 and the Barnsdall Road in the Parish of Jefferson Davis just east of the Town of Elton on May 10, 1951. Plaintiff is the Sheriff of West Feliciana Parish, and was a passenger in a Buick automobile owned by the Sheriff's Department of that Parish which, at the time of the accident, was being driven by Sam D'Amico, an attorney at law of Baton Rouge, when it was involved in an accident with a small Chevrolet truck owned and operated by the defendant.
The petition alleges and the evidence shows that the defendant made a left turn in front of the Buick automobile in which the plaintiff was a passenger, causing the driver of the Buick automobile to have to swerve to the left and go off the highway striking a culvert in order to avoid striking defendant's truck. Both vehicles just prior to the accident were travelling east.
The defendant, after pleading a general denial, charged the driver of the Buick automobile with affirmative acts of negligence in driving at an excessive rate of speed, not having his car under control, not remaining *317 on the right side of the highway and applying his brakes too suddenly and forcefully, but did not plead contributory negligence on the part of plaintiff.
The appellant here has asked an increase of the quantum because he feels that the amount awarded by the Lower Court is grossly inadequate and the defendant has answered the appeal contending that the accident was caused by the negligence of the driver of the Buick automobile and that no damages should have been awarded at all, but that if damages were awarded, the judgment should not exceed $500.
The Trial Judge has furnished us with a written opinion in which the evidence has been fully analyzed and the law applicable thereto correctly applied, except as to quantum, as follows:
"This is a suit by Sheriff T. H. Martin of West Feliciana Parish against Mr. Fred Bruchhaus of Jefferson Davis Parish for damages for personal injuries resulting from an accident which occurred on or about May 10, 1951, at the intersection of U. S. Highway 190 and the Barnsdall Road located in the extreme northeast corner of Jefferson Davis Parish, Louisiana. At the time of the accident Sheriff Martin was a passenger in a 1951 Buick Sedan being driven by Mr. Sam J. D'Amico, an attorney from Baton Rouge, Louisiana.
"Petitioner avers that at approximately 6:45 p. m. on or about May 10, 1951, he and Sam J. D'Amico were driving East on U. S. Highway 190 with petitioner a passenger riding on the right front seat; that as the Buick automobile driven by Sam D'Amico approached a point on U. S. Highway 190 where it is intersected by the Barnsdall Road in the Parish of Jefferson Davis, a 1950 Chevrolet truck owned and operated by Mr. Fred Bruchhaus and which had been in a stopped position off the highway on the right or south shoulder, started from a parked position and moved into the highway directly in front of the Buick automobile in a northerly direction; that the emergency created by the negligent action of the defendant in moving into the highway immediately in front of the Buick automobile's path made it necessary for the driver of the Buick automobile to swerve to the left and apply his brakes in order to avoid a collision; that as the driver of the Buick automobile swerved to the left and into the left lane of traffic, defendant was proceeding across the highway in a northerly direction and onto the Barnsdall road; that in order to avoid a collision with the Chevrolet truck, the driver of the Buick automobile was forced to steer the Buick still further to the left and onto the left shoulder and into a ditch, whereupon the Buick automobile struck a concrete culvert with considerable force; that at no time did the driver of the Chevrolet truck give any signal or indicate in any way that he was going to move onto the highway or move across the highway directly in the path of on-coming traffic, nor was there any reason to suspect that he was going to do so; that as a result of the accident, petitioner sustained a severe blow to his face and mouth which blow caused the loss of four front teeth; that as a result of the collision petitioner suffered damages as follows:

"A. Physical pain and suffering,
 inconvenience and discomfort $5,000.00
"B. Mental pain and anguish,
 embarrassment 5,000.00
 _________
 $10,000.00

"Petitioner alleges that the sole and proximate cause of the said collision was due to the negligence of defendant.
"The defendant admits the occurrence of the accident. However, he denies all the material allegations of the petition and alleges that the accident was due solely to the negligence of plaintiff. His answer alleges that he did hold out his hand, giving a signal that he was about to make a left turn into the Barnsdall road; that when he started making said turn, the Buick automobile was a long distance off and defendant had ample time to make the left turn; that, however, the Buick car was being driven at a rate of speed far greater than is permitted by law, and *318 did approach the Barnsdall Road more quickly than defendant had anticipated, because defendant did not anticipate that the car was approaching at a speed in excess of 80 miles per hour, but even so, if the driver of said Buick automobile had not become panicky and had remained on his side of the road, even traveling at such excessive speed, there would have been no accident; that defendant had driven his truck into the Barnsdall road, clear of Highway 190, when the Buick automobile swerved to the left or north shoulder of the highway; that there was no necessity for the driver of the Buick automobile to swerve to the left and into the left lane of traffic, or into the left or north shoulder of the highway, or into a ditch.
"As is usual in proceedings of this nature the evidence is conflicting and irreconcilable. However, it is agreed that it was daylight and the weather was good at the time of the accident.
"At the outset it should be pointed out that there has been no question raised as to contributory negligence. Defendant did not plead it in the pleadings, nor did he urge it in his brief. Therefore, it is not necessary to consider any question of contributory negligence. French v. T. S. C. Motor Freight Lines, La.App., 39 So.2d 363. Oliphant v. Town of Lake Providence, La.App., 193 So. 516. However, each party has plead that the accident was entirely due to the negligence of the other party, and we must therefore consider the evidence.
"During the course of the trial several objections were made to the admissibility of evidence. The court in some instances reserved its ruling and permitted the evidence to go in subject to a later ruling. Since neither party furnished authorities in connection with their respective objections, the objections are hereby overruled except insofar as such evidence may be considered as enlarging the pleadings.
"Plaintiff's eyewitnesses to the accident were Reverend Harvey G. Williamson, a Methodist Minister from Minden, Louisiana, Sam J. D'Amico, an attorney from Baton Rouge, Louisiana, and Sheriff T. H. Martin of West Feliciana Parish. Defendant's eyewitnesses were Herbert Chretien, Russell Courville and Harry Chretien, all residents of Jefferson Davis Parish.
"The defendant was called on cross-examination at the opening of the plaintiff's case, but was not called to testify on direct examination. On cross-examination, he testified that he did not go on the right (South) shoulder of Highway 190 prior to turning North on the Barnsdall Road; that he was traveling very slowly prior to turning north; that he saw the Chevrolet pass him and estimated its speed at 80 miles per hour. He testified several times that he never saw the Buick and later changed to say that he saw it `way behind' but refused to estimate how far behind. In exhibit P-3 Mr. Bruchhaus marked an `X' to indicate where his truck was at the time the Buick went off the road. This indicates that the Bruchhaus truck blocked the entire north lane of traffic and a part of the south lane at the time the Buick went off the road. In this connection his testimony was:
"Q. `At the time the Buick automobile went off the road, I take it that your truck was still entirely on the road, is that correct? A. I was part of the way on the concrete, yes.'
Mr. Bruchhaus testified positively that he held out his hand to indicate a left hand turn prior to making the turn.
"Reverend Williamson testified that he had been driving a Chevrolet automobile east on Highway 190 at a speed of about 60 miles per hour and had to slow down because Mr. Bruchhaus's truck was traveling on the same road and in the same direction at a speed of about 20 to 30 miles per hour; that he became concerned about the future movements of the truck because it crossed the center line of the highway once or twice, which led Rev. Williamson to believe that the driver was doubtful as to what he was going to do next; that just as he decided it would be safe to pass the truck and at a point about 30 to 40 feet west of the Barnsdall road, the truck *319 pulled to the right and completely off the paved highway onto the south shoulder; that Mr. Brucchaus never gave any hand or light signal; that considering the difficulty he had experienced in getting around the truck, Rev. Williamson after passing watched in the rear view mirror to see what the truck was going to do; that after he had traveled 50 to 75 feet past the truck, it pulled abruptly across the road turning north right in the path of the Buick which had been following Rev. Williamson. Rev. Williamson's testimony regarding the actions of the Buick to avoid the accident is as follows:
"Q. `In other words, do you think that if the Sheriff's car had gone straight instead of swerving, that Mr. Bruchhaus' vehicle might have crossed in front of him in time? A. He would have hit him.'
"Q. `Why do you say that? A. Well, from what I recall, he was approximately in the middle of the road, in the turn; his front half was on the other lane and his back half was still on the right lane. He was completely in the middle.'
From Rev. Williamson's position, when the Buick struck the culvert, he thought that the Buick had struck the truck. He turned around and returned to the scene of the accident to render aid.
"Mr. D'Amico was driving the Buick in the same direction and testified he was driving about 250 feet behind Rev. Williamson's Chevrolet at a speed of about 60 miles per hour. His version of the accident is summed up in one statement during his testimony:
"A. `As I arrived, I would say around three hundred feet from the intersection, I noticed the brake lights of this Chevrolet which was ahead of us and I wondered why he had reduced his speed so I reduced the speed of the Buick. About that time I noticed this truck traveling at a very low rate of speed and going off the concrete slab and I noticed the Chevrolet swerve to the left to pass this vehicle. The Chevrolet did pass. The truck came to a stopcame to a dead stop or came to a near stop, completely off of the concrete slab I would say maybe four to six feet. Then, all of a sudden, he started and he turned back onto the highway and when he did I jammed on the brakes and went to the left hoping that I could get around in front of him. But, instead of his stopping, he continued and when I was on the left-hand side of the highway he was right smack in the middle of it and continued on across. Realizing then that I was in the predicament of hitting him one way or the other, I decided to take the ditchthinking that might be the best way but when I went into the ditch I saw the concrete culvert and hit it head on.'
"Sheriff Martin's testimony is along the same line as Mr. D'Amico's. On cross-examination he admitted that after the accident he told D'Amico that had he continued on the right-hand side of the road he would have avoided the accident.
"Mr. Herbert Chretien testified that he was standing at the northeast corner of the intersection at the time the accident occurred and saw the entire matter from start to finish. He did not see the Chevrolet pass Mr. Bruchhaus, nor did he see the Chevrolet stop and turn around. However, he did recall that sometime after the accident, a Chevrolet came up and stopped. His testimony was that the Bruchhaus truck did not go off the pavement to the south prior to turning north; that the truck made a slow gradual turn north into the Barnsdall road; that the turn had been negotiated and the truck was off the pavement before the Buick applied the brakes and swerved to the left; that the truck was some distance up the Barnsdall road and beyond the culvert when the Buick struck the culvert; that the Buick was coming at a speed of 75 miles per hour or faster; that the hood of the Buick came off when it struck the culvert and passed behind the Bruchhaus truck and landed at the feet of the witness; that he did not hear any horn sounded. He was not asked if Mr. Bruchhaus signaled for a left turn and so did not testify on this point.
*320 "Russell Courville was a passenger in Mr. Bruchhaus' truck, sitting on the right side of the seat. He testified that Mr. Bruchhaus did not go off the pavement to the south prior to turning north; that Mr. Bruchhaus signaled before making the left turn (on cross-examination, in showing what signal was given he signaled for a right-hand turn, however, he testified that he was not in a position to see how Mr. Bruchhaus' hand looked while it was being held out); that the turn was made very, very slow and in first gear; that he did not hear a horn blow; that he did not see a Chevrolet or any other car pass shortly before the accident, nor did he see the Chevrolet turn around, nor did he see the Chevrolet come up shortly after the accident; that nobody came up to talk to him and Mr. Bruchhaus after the accident.
"Mr. Harry Chretien was standing in front of Fontenot's store which is located on the north side of Highway 190 about 75 to 100 yards west of the intersection of Barnsdall Road and Highway 190. He did not see the Chevrolet pass Mr. Bruchhaus, nor did he see the Chevrolet at any time. His testimony was that Mr. Bruchhaus put his left hand out to indicate a left turn when he was in front of Fontenot's store; that the Bruchhaus truck did not go off the pavement to the south prior to turning north; that the left turn had been negotiated and the truck was off the pavement before the Buick applied the brakes and swerved to the left; that when the Buick hit the culvert the hood came off and flew behind the truck; that the Buick was traveling very fastat first he couldn't say how fast, but fast, and then on redirect examination he testified the Buick was traveling about 70 miles per hour.
"On rebuttal, Mr. D'Amico testified that Mr. Herbert Chretien told him immediately after the accident that he tried to flag down Mr. Bruchhaus to prevent him from turning left. It was agreed by all witnesses that Mr. Bruchhaus suffered no damages, and that Sheriff Martin sustained some injuries in or around the mouth.
"Except for the medical testimony, this summarizes all of the evidence.
"It is always a difficult and disagreeable task to determine which of two sides is relating the correct version in an accident case. It is not to be understood that such a statement is even an intimation that one side or the other has perjured themselves. It simply is a fact that no two people see and recall an event in the same way and it is a difficult matter to reconstruct the details some months after the occurrence.
"Defendant relies on Messrs. Herbert Chretien, Russell Courville and Harry Chretien to show his version of the accident. Yet, although each was in a position to see, none of these men remembered that the Chevrolet driven by Rev. Williamson passed the Bruchhaus truck shortly before the accident. On cross-examination, Mr. Bruchhaus referred to the Chevrolet passing him just prior to the accident. Although defendant's counsel discounts Rev. Williamson's testimony on the basis that he reflected a very vehement prejudice for some unfortunate automobile accident which he had many years ago, there is nothing to indicate that they feel he is unworthy of belief. This Court finds as a fact that the Chevrolet did pass the truck shortly before the accident. That defendant's three witnesses did not recall this indicates that they were not observing the cars as carefully as the other witnesses and consequently their version of the accident is discounted.
"Counsel for defendant discredit Mr. D'Amico's testimony on the basis that his statements and measurements contradict each other. After a careful reading of his entire testimony this Court feels that the discrepancies pointed to are not sufficient to discredit his testimony.
"Defendant's brief often refers to the physical facts in this case proving that defendant was not negligent. The physical fact referred to is that `Even though Fred Bruchhaus was driving slowly in making his turn, he had driven completely off the *321 Highway 190, and was some little distance in the Barnsdall road, on the north side of the highway at the moment the Buick crashed into the culvert. It is established without contradiction that when the Buick struck the culvert, its hood `flew off' and landed in the Barnsdall Road, near the feet of the witness, Herbert Chretien, and behind the Bruchhaus truck, which at that instant had come to a stop in the Barnsdall Road.'
"What defendant's counsel are labeling a physical, undisputed fact was not proved in this case, for it was not shown that the hood flew behind the truck. Although Herbert and Harry Chretien so testified, it is difficult to line up their testimony with that of the defendant himself when he located his truck as blocking the north half and part of the south half of Highway 90 at the time the Buick went off the road. (See Exhibit P-3.) Neither Mr. Bruchhaus nor Mr. Courville were questioned as to whether the Buick's hood flew ahead or behind them. Rev. Williamson thought that the Buick had struck the truck which would indicate that the hood did not pass behind the truck.
"The evidence did indicate that had Mr. D'Amico maintained his course and kept on the right-hand side of his road or taken the shoulder to the right-hand side the accident might have been avoided. But this court believes that had Mr. D'Amico so maintained his course and had Mr. Bruchhaus stopped instead of maintaining his left turn, as he might well have done, there might well have been a much more serious accident. See Graves v. Riser, La. App., 62 So.2d 163.
"The authorities are uniform to the effect that the motorist who desires to make a left-hand turn carries the responsibility of being certain that the turn can be made without danger to normal overtaking or on-coming traffic and he must yield the right-of-way. The foregoing rule is merely a reflection from certain provisions of the Highway Regulatory Act. LSA-R.S. 32:235. Graves v. Riser, La.App., 62 So. 2d 163, at page 165 and cases cited therein.
"The cases cited by defendant as being controlling of the issues in this case are distinguished for the following reasons. Cottons, Inc. v. Sullivan, Long and Hagerty, La.App., 10 So.2d 505, because the Court held that the other vehicle was some four blocks back when the first vehicle started its U turn. Burns v. Evans Cooperage Co., La.App., 17 So.2d 743, affirmed 208 La. 406, 23 So.2d 165, at page 169, because it was the Court's finding of fact that the driver of defendants' truck was preparing to make a left turn after taking the proper precautions, but that he did not attempt to make the turn when he noted the approach of plaintiff's automobile out of control. Further, the court found that if there was any doubt as to its findings, contributory negligence of the plaintiff barred recovery. In the present case, the defendant's counsel did not plead or argue contributory negligence. Massicot v. Nolan, La.App., 65 So.2d 648, because the Court found that the defendant signaled her intention to execute a left turn when the plaintiff was some 250 to 300 feet away from plaintiff, and the court felt that defendant was reasonable in her belief that she could safely make the left turn.
"In the present case, it is the opinion of this court that the Buick was not more than 250 feet behind the Chevrolet when the Chevrolet passed defendant's truck and was traveling at an approximate speed of 60 miles per hour when the Chevrolet passed the defendant's truck. I therefore conclude that it was unreasonable for defendant to make his left turn in the face of this overtaking traffic and the defendant is guilty of negligence.
"This leaves for consideration the award to be made to Sheriff Martin. The Sheriff is a married man of 54 years of age and sustained no loss of salary as a result of these injuries.
"As a result of the accident, Sheriff Martin suffered the breaking of four anterior (the upper front four) teeth up under the gum tissue and laceration of the gum tissue itself. Dr. Frank Paul Dileo *322 treated Sheriff Martin the morning after the accident, but was unable to do anything other than instruct him on home care as to compresses on the face to reduce the swelling and the use of rinses in the mouth. He continued to have the Sheriff come back every two or three days for four weeks. At the end of the four week period he operated with a local anesthetic to remove the roots of the teeth and clean up all of the tissues and sutured it back over. This operation healed such that the replacement dentures could be used by the Sheriff one month after the operation. Thus, it was two months from the date of the accident before he was able to make his usual appearance. It is to be noted that there was no disfigurement.
"For the first two weeks after the accident Sheriff Martin was on a liquid diet; the next six weeks he was on a soft food diet and thereafter he was able to return to a fairly normal diet. Dr. Dileo had treated the Sheriff on prior occasions and testified that Sheriff Martin had a sound set of teeth prior to the accident.
"The only damages plaintiff seeks in this action are damages for `physical pain and suffering, inconvenience and discomfort, and mental pain, anguish and embarrassment.'
"After carefully reading the cases cited by both plaintiff and defendant, Gartman v. Traylor, La.App., 164 So. 660; Carter v. LeBlanc Lumber Co., La.App., 37 So. 2d 471; Wiggins v. American Surety Co. of New York, La.App., 41 So.2d 245, and considering the pleadings, the law and the evidence it is felt that an award of $1,200 would be ample and just compensation for the physical and mental pain, suffering, anguish, embarrassment, inconvenience and discomfort.
"For these reasons, there will be judgment against the defendant, Fred Bruchhaus, and in favor of the plaintiff, T. H. Martin, in the sum of $1,200, defendant to pay all costs of Court."
We fully agree with the finding of fact as made by the Lower Court in finding defendant negligent in making the left turn and not seeing the Buick automobile in which the plaintiff was a passenger approaching from his rear. The making of a left turn on a much-traveled highway at an intersection is a dangerous operation, and the responsibility for seeing that such a turn can be made in safety is placed upon the motorist desiring to make the turn. Myers v. Maricelli, La. App., 50 So.2d 312; Toney v. Burris, La. App., 45 So.2d 438; Fidelity & Guaranty Fire Corp. v. Ritter, La.App., 37 So.2d 349.
The appellant has asked that we increase the quantum in this court because the sum of $1,200 awarded by the Trial Court is grossly inadequate. Plaintiff did not itemize any sum for the loss of his four teeth and limited his itemized statement of damages to physical pain and suffering, inconvenience and discomfort, mental pain and anguish and embarrassment. He did allege, however, in his petition that he suffered a severe blow to his face and mouth which caused the loss of four front teeth. These teeth have been replaced by a denture and plaintiff suffers no disfigurement. He was under the treatment of the dental surgeon for a period of two months.
This Court, in Murphy v. Henderson, La.App., 23 So.2d 369, decided in 1945, approved a trial court's award of $1,500 for physical injuries, pain and suffering, including loss of four upper and four lower front teeth which were replaced by bridges. See also Martin v. Authement, La.App., 28 So.2d 469; Carter v. LeBlanc Lumber Co., supra.
Taking into consideration the nature and extent of plaintiff's injuries and the pain and suffering endured by him, we are of the opinion that the award should be increased to $2,000.
For the reasons assigned, the judgment appealed from is amended by increasing the award from $1,200 to $2,000 in favor of the plaintiff and, as thus amended, the judgment appealed from is affirmed.