64 So.2d 257 (1953)
MARTIN
v.
GLOBE INDEMNITY CO.
No. 19953.
Court of Appeal of Louisiana, Orleans.
April 8, 1953.
*258 James J. Morrison, New Orleans, for appellee.
Bienvenue & Culver and H. F. Foster, III, New Orleans, for appellant.
REGAN, Judge.
The plaintiff, Magnair Martin, instituted this suit against defendant, Globe Indemnity Company, liability insurer of the Society for the Prevention of Cruelty to Animals, endeavoring to recover the sum of $114.62, representing property damage incurred by his 1947 Dodge Sedan, as the result of a collision with what has been colloquially designated as a "dog wagon" in Jackson Avenue near S. Prieur Street, in the City of New Orleans on June 19th, 1951, at about 7:00 a. m.
Defendant answered and admitted the occurrence of the accident, but denied that the operator of the insured's "dog wagon", T. C. Monroe, Jr., was guilty of any negligence in the premises and, in the alternative, pleaded the contributory negligence of plaintiff.
From a judgment in favor of the plaintiff as prayed for defendant prosecutes this appeal.
The record reveals, only for the purpose of orientation, that Jackson Avenue is a two-way thoroughfare running from St. Charles Avenue to the lake; this portion of Jackson Avenue does not possess a "neutral ground"; both plaintiff's and the insured's vehicles were being driven in Jackson Avenue in the direction of the lake, each vehicle moving at about a speed of approximately fifteen miles per hour.
Briefly, plaintiff contends that he had trailed the "dog wagon" at a safe distance for about 450 feet and upon ascertaining that the left or opposing traffic lane on the uptown side of Jackson Avenue was safe for passage, because of the absence of vehicular traffic moving towards the river, plaintiff, without sounding his horn, accelerated his vehicle and endeavored to pass on the left side of the "dog wagon"; when the front section of his car was abreast of the cab of the "dog wagon", the operator thereof abruptly executed a left turn into S. Prieur Street in hot pursuit of a stray dog without manifesting any signal of his intention; this maneuver resulted in a collision which occurred wholly in the left traffic lane, and when both vehicles ceased moving, plaintiff's car was wedged between the insured's "dog wagon" and a third car which had been parked parallel to the uptown curbing of Jackson Avenue about fifteen feet removed from the riverside of S. Prieur Street.
*259 Monroe, the operator of the "dog wagon" related his version of the accident, which was substantially the same as plaintiff'sthe only conflict arises over the existence of a "left turn signal".
Defendant insists that Monroe was free of negligence and, as usual, endeavors to contradict the plaintiff's version of the proximate cause of the accident. It contends principally that the proximate cause of the collision was plaintiff's failure to afford the operator of the insured's vehicle the benefit of his intention to pass by sounding his horn; in not acting in conformity with a clear left turn signal manifested by Monroe; and in attempting to pass another vehicle traveling in the same direction "at an intersection", all of which violated the provisions of the Traffic Ordinance of the City of New Orleans, No. 13,702 C.C.S.
The only questions posed for our consideration are ones of fact, i. e. whether the operator of the insured's vehicle endeavored to execute a left turn from the right or downtown traffic lane of Jackson Avenue into S. Prieur Street without manifesting a reasonable signal of his intention and was plaintiff guilty of any negligence which contributed, in the last analysis, to the cause of the accident?
The trial judge resolved the answers to these questions of fact in favor of plaintiff and our careful review of the record fails to disclose any error in these conclusions.
Focusing our consideration initially upon defendant's contention that plaintiff, under the existing circumstances, should have sounded his horn, in conformity with Article 5, Section 12 of Ordinance No. 13,702 C.C.S. before attempting to pass the "dog wagon" in the left or opposing traffic lane of Jackson Avenue, we are of the opinion that it was not the intention of those who drafted and enacted the Ordinance "to require that the horn of every vehicle be sounded whenever its driver intends to pass a vehicle which is already sufficiently far to the right. It is quite plain that the purpose of the * * * provision was to give to the overtaking vehicle the right to require the vehicle ahead to swerve to the right in order to afford a path in which the overtaking vehicle might pass." Cantrell v. H. G. Hill Stores, La.App., 193 So. 389, 392.
In addition to the foregoing rationale, there was no immediate reason for plaintiff to forewarn Monroe of his intention to pass, since plaintiff was overtaking Monroe in a separate or opposing traffic lane which passage did not require that Monroe move to the right in order to afford a clear path for the movement of plaintiff's vehicle.
After considering defendant's assertion that plaintiff was negligent in endeavoring to pass Monroe "at an intersection" Article 5, Section 12(E) of the Ordinance, we are of the opinion based on our interpretation of the testimony contained in the record that the initial contact of the vehicles occurred some distance from the intersection and the movement of the vehicles ceased about fifteen feet from the intersection. This appreciation of the evidence appears plausible in view of the fact that a vehicle moving at a speed of fifteen miles per hour will travel 21.9 feet per second and it is a fair assumption that the vehicles did not come to an immediate stop upon contact; since the vehicles "stopped" fifteen feet from the intersection, the initial contact must have occurred some distance from the corner, therefore, plaintiff was not passing the "dog wagon" "at an intersection".
Lastly defendant insists that plaintiff was negligent in not acting in conformity with a clear left turn signal manifested by the operator of the "dog wagon". Monroe, at the time of the trial, was a medical student attending Louisiana State University and presumably was a medical student, employed by the S. P. C. A. during his vacation, at the time that the accident occurred in June of 1951. He testified that he observed a dog running in a side street seconds prior to the accident and he "wanted to go `round S. Prieur and head him off on the other side. * * * we have to be in a hurry to catch a dog * * *". In response to the question "sort of like fox hunting", he observed "once you spot him, you have to go after him".
*260 The record, through the zealous efforts of plaintiff's counsel and Monroe's unwitting cooperation, paints a classic provocative picture of this young man attired in the resplendent colors of the fashion, gracefully riding to the bounding hounds, sighting his startled quarry, impetuously plunging his knightly spurs into the lean flanks of his noble steed, to the jovial shouts of tallyho.
Plaintiff and a passenger in his car testified that they did not see Monroe signal for a left turn prior to the collision. This is the only substantial conflict in the testimony. Monroe and his helper, the "dog catcher" testified that he did manifest such a signal, but Monroe's elucidation is more judicially enlightening:
"Well, about 7 o'clock in the morning we were driving on Jackson Avenue doing towards the lake, and I saw a dog on one street toward the river from South Prieur; this is a street that's only a quarter-of-a-block between that street and South Prieur, and I saw a dog on this street, and I made a signal for a turn, which was very short because I had to start turning and get my hand back in, and I started to make my turn, and out of a corner of my eye I saw a car approaching on my left and I tried to get back into the right-hand lane, but before I could do so this car collided with me."
The foregoing statement lends emphasis to the spontaneous enthusiasm stirring in the "breast of this disciple of Diana of the Chase". In some measure, it also reconciles the conflict in the testimony of plaintiff and Monroe relative to a "left turn signal" because, even though Monroe may have intended to manifest a proper signal, it was obviously inadequate by his own statement, and certainly not one calculated to either attract the attention of plaintiff, nor to afford him an opportunity to act in conformity therewith.
In the last analysis the record establishes that the proximate cause of the collision was defendant's failure to manifest a reasonable signal of his intention to execute a left turn from Jackson Avenue into So. Prieur Street.
Judges have repeatedly stated that a motorist intending to execute a left turn in an intersection must first ascertain by careful observation that the maneuver can be executed safely. Electric Delivery System v. Lang Co., La.App., 1952, 61 So.2d 607; Zurich Fire Ins. Co. v. Thomas, La. App., 1950, 49 So.2d 460; Tornabene v. Rau, La.App., 1948, 34 So.2d 655.
The record shows that damages in the amount of $114.62 have been adequately proven.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.