ELLIS, Judge.
This appeal involves a collision which occurred on U. S. Highway 90 on the 21st day of January, 1954 at approximately 3:00 P.M. between a truck insured by the defendant, which was attempting to make a left turn, from said highway, into an intersecting gravel road, and an automobile owned by the plaintiff and being driven by his wife, which was attempting to pass the truck.
It was stipulated by counsel at the commencement of the trial in the district court that the damage to plaintiff’s vehicle was $656.76, and the damage to the truck was $535.56, for which the defendant owner *673 reconvened. On the date of the accident the truck of the defendant, Daigle, in which he was riding was being driven by his employee in an easterly direction on U. S. Highway 90 toward Crowley, La., with the intention of turning to his left off of the highway at a gravel road, which led to Midland, La. Following the truck was the automobile of the plaintiff being driven by his wife. It was raining just prior to the collision and the speed of the plaintiff’s car was estimated at 45 to 60 miles per hour and that of the truck at 35 to 45 miles per hour. There is no contention that either car was exceeding the speed limit.
The driver of the truck testified that he saw the plaintiff’s car behind him when he looked in the mirror just prior to easing over into her lane, the passing lane, of travel. Specifically he stated, “When I looked in the mirror, she was coming in the back, but she was a good distance, you know, just easing over into the inside road.” He further stated that he started “easing over” when he was a good distance from the intersection, “250 to 300 feet,” at which time he also stated he had on his dash signals and his hand out the window. The defendant-owner of the truck testified that his driver started slowing down and pulling into the left or passing lane of travel approximately 200 to 250 feet from the intersection of the gravel road upon which he intended to make a left hand turn. According to these witnesses the truck driver edged over or gradually began to occupy the passing lane.
According to the testimony of Mrs. Des-ormeaux, she pulled into the left lane in order to pass the truck, and when she was within 20 to 30 feet of it the driver suddenly veered into the passing lane directly in front of her. She thought, and so testified, that he did this near the intersection and that he made a sharp turn. Her testimony reveals that she did not have a clear idea, and was not certain, as to just where or when the truck came into her lane of travel with relation to the intersecting gravel road, for she frankly answered, “I don’t know” when asked if she had not pulled further to her left so that her left wheels were on the muddy shoulder of the road, for a distance of 150 to 160 feet prior to the actual impact.
The physical facts corroborate the testimony of the driver of the truck and its owner that it eased or edged over into the passing lane in front of the plaintiff’s automobile when it was a distance of 200 to 300 feet from the intersection. There were 150 to 160 feet of tracks along the muddy shoulder made by the plaintiff’s automobile to the point of impact, which was definitely located by the trooper as being approximately seven feet north of the center line of highway 90, and one to two feet west of an imaginery line extended across U. S. Highway 90 from the western boundary of the intersecting gravel road. The truck, therefore, had never reached the intersection and had turned left in disregard of the law. See LSA-R.S. 32:235, subd. B. Counsel argues, however, that even if this truck was negligent that the driver of plaintiff’s automobile was also negligent under LSA-R.S. 32:233 which reads as follows: (B) “The driver of an overtaking vehicle shall give audible and sufficient warning of its intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction,” and (E) “The driver of a vehicle shall not, under any circumstances, overtake or pass another vehicle proceeding in the same direction at any railroad grade crossing or any intersection of the highway, unless permitted or instructed to do so by duly authorized traffic or police officer.”
It is admitted that the driver of plaintiff’s automobile did not blow her horn prior to starting her passing maneuver. The driver of the truck admits that he saw the plaintiff’s automobile approaching him from the rear when he looked in his mirror at a time prior to his easing over into the left hand lane of travel. He put it this way: “When I saw the car the car was a good piece in the back of me to the right *674 hand side of the road.” We are also of the opinion that Mrs. Desormeaux pulled from the right hand lane behind the truck into the left lane in order to pass, and at the time the truck was still in its right hand lane of travel. Under such facts there was no necessity under the law cited hy counsel for defendant as interpreted by the jurisprudence for the driver of plaintiff’s car to blow her horn. This court so held in Mooney v. American Automobile Insurance Co., La.App., 81 So.2d 625, 628. Our brethren of the Orleans Circuit in the case of Benenate v. Brooks, La.App., 95 So.2d 757, 760, so held and stated:
“ * * * Some argument is made that Brooks was negligent because he failed to blow his horn as he approached the Eloise car, but the failure to give horn signal did not amount to negligence as we are unaware of any statute, highway regulation, or jurisprudence which specifically requires or holds that a motorist in the left or fast lane must give a horn signal to an automobile in the right or slow lane of the intention to pass. True, LSA-R.S. 32:233, subd. B provides that the driver of an overtaking vehicle shall give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction. But, it is quite clear that the Legislature in adopting said section of the statute had no intention to require that the driver of every vehicle should sound his horn whenever he intends to pass a vehicle which is in another lane or sufficiently far to the right as to permit a safe passage. All that the said section means is that when the overtaking vehicle attempts to pass a vehicle which is in its path, the overtaking driver should sound his horn in order to give the driver of the forward vehicle notice of the intended passage so that he can swerve right thus affording a path to the overtaking car. On two occasions we held this to be the meaning and import of similar provisions contained in a traffic ordinance of the City of New Orleans, and we do not think that the rules should be any different with reference to LSA-R.S. 32:233, subd. B. See Cantrell v. H. G. Hill Stores, Inc., La.App., 193 So. 389; Martin v. Globe Indemnity Co., La.App., 64 So.2d 257.
“We agree with what the Court of Appeal for the First Circuit said in Mooney v. American Automobile Insurance Co., La. App., 81 So.2d 625-628:
“ ‘ * * * Furthermore, the main necessity for blowing the horn is so that the car in front will give way.’ ”
As to the second contention that she violated LSA-R.S. 32:233, subd. E in attempting to pass at the intersection of the gravel road and Highway 90, we find no merit under the facts in the case. Mrs. Desormeaux, driver of plaintiff’s car, made a legitimate and legal attempt to pass the truck when it was two to three hundred feet from the intersection, and had it not blocked her right of passage she would have successfully passed the truck a safe distance before arriving at the intersection. It is true that there is no testimony of any brake marks nor does Mrs. Desormeaux remember applying any brakes or even running off of the highway, however, we think it most probable from the testimony that when she got, as stated by her, within 20 to 30 feet of this truck it eased over into her lane of passage, thereby creating an emergency and relieving her of that cool, calm deliberation expected of a driver under normal circumstances. She pulled to the left so that her left wheels were off of the pavement on the muddy shoulder, in order to avoid a collision. The truck driver, likely kept edging over to the left without ever looking to the rear even though he knew before he ever attempted to usurp the left lane of passage that a car was easing into the inside or passing lane behind him.
It is argued that the truck driver turned on his directional lights in front and also put out his hand. If he did his it was not until the plaintiff was already in the *675 act of passing him and had reached a point of no return.
For the above and foregoing reasons we are of the opinion that the judgment of the district is not manifestly erroneous and it is hereby affirmed.