111 So.2d 848 (1959)
George BABINEAUX, Plaintiff-Appellant,
v.
Anderson SIMS, Defendant-Appellee.
No. 4815.
Court of Appeal of Louisiana, First Circuit.
May 1, 1959.
*849 Johnson & LeBlanc, New Iberia, for appellant.
No appearance for appellee.
Before LOTTINGER, TATE and HOOD, JJ.
HOOD, Judge ad hoc.
This is a tort action arising out of a motor vehicle collision between a 1952 model Ford pick-up truck owned and being driven by plaintiff, George Babineaux, and a 1949 model Dodge automobile owned and being driven by defendant, Anderson Sims. Plaintiff seeks a judgment against defendant for the sum of $242.36, being the alleged cost of repairing the damages to his pick-up truck. Defendant denies liability and in a reconventional demand seeks a judgment against plaintiff for the sum of $345, being the alleged cost of repairing the damages to his automobile.
The case was tried on its merits, and judgment was rendered by the trial court rejecting the demands of both the original plaintiff and the plaintiff-in-reconvention. From this judgment plaintiff, Babineaux, has appealed. After the appeal was perfected defendant's attorney withdrew, and at the time the case was presented to this court the defendant-appellee was not represented by counsel. We have the benefit, however, of a brief which was filed in behalf of defendant in the trial court, which brief constitutes a part of the record.
The accident occurred at about 7:00 o'clock a. m., on February 1, 1957, on U. S. Highway 90, about one quarter of a mile east of the corporate limits of the city of Patterson, in St. Mary Parish, Louisiana. The highway at that point is straight, running east and west between two curves. It is a two-lane black top road, the hard surfaced portion of which is 22 feet wide. At the time of the accident it was daylight, the road was dry and visibility was good.
Shortly before the accident occurred, defendant Sims was driving his car along this highway at a speed of between five and fifteen miles per hour. Immediately behind him was an unidentified car, and following that car was plaintiff's truck. All of these vehicles were being driven in an easterly direction, in the east-bound lane of traffic. The unidentified car then crossed over into the west-bound lane of traffic, passed defendant's car and then returned to the east-bound lane. After the unidentified car had returned to its proper lane of traffic and plaintiff had determined that there were no oncoming vehicles, he then proceeded to cross over into the west-bound lane for the purpose of overtaking and passing defendant's car. While plaintiff was in the west-bound lane endeavoring to pass defendant, and when his truck was about even with defendant's car, defendant suddenly turned his car sharply to the left and caused the left front portion of his car to collide with *850 the right front fender and wheel of plaintiff's truck. Both vehicles were damaged as a result of this accident.
The evidence establishes that when plaintiff observed that defendant's car was being turned to the left, he caused his truck to veer to the left, and that his truck was partially on the north shoulder of the highway when the collision occurred. The point of impact was in the west-bound lane of traffic, approximately one foot from the north edge of the hard surfaced portion of the highway. Plaintiff was driving between 25 and 35 miles per hour while he was endeavoring to pass defendant, which speed was well within the legal speed limit of 60 miles per hour.
Defendant at that time was employed by Marine Construction Company at its shipyard located just north of the scene of the accident. He was enroute to his place of employment and was attempting to turn into the entrance of the shipyard when the collision occurred. The point of impact was approximately where the entrance road to this shipyard intersects the highway.
Plaintiff contends that defendant gave no signal indicating that he intended to make a left turn, whereas defendant contends that he held his left hand out prior to turning. The trial judge concluded that defendant did not give a timely and proper hand signal, and we agree with him in that conclusion. The preponderance of the evidence is to the effect that no signal of any kind was given by defendant indicating that he intended to make a left turn, and defendant admits that he did not see plaintiff's truck until the moment of the collision.
The law provides that the driver of any vehicle on the highways of this state "shall not attempt to make a turn unless the way is clear." LSA-R.S. 32:235, subd. A. We have held many times that a left turn across a highway constitutes one of the most hazardous maneuvers that a driver is called upon to perform, and that the responsibility for seeing that such a turn can be made safely is placed upon the motorist making the left turn. Methvin v. Roshto, La.App., 96 So.2d 383; Guillory v. De Torre, La.App., 99 So.2d 378; Blanchard v. Ashby Construction Co., Inc., La.App., 95 So.2d 670; Service Fire Ins. Co. of New York v. Suezy, La.App., 77 So.2d 110; Ellis v. White, La.App., 73 So.2d 610; Martin v. Bruchhaus, La.App., 74 So.2d 316.
Also, in the case of Washington Fire & Marine Ins. Co. v. Firemen's Insurance Company, 232 La. 379, 94 So.2d 295, 296, the Supreme Court of this State said:
"The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do so safely; not only is this cardinal rule of the road founded on common sense, but in our State is a positive enactment, incorporated in the Revised Statutes as R.S. 32:235, by the terms of which it is the mandatory duty of the driver of any vehicle on the highways of this State to ascertain, before turning upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed; and said driver `shall yield the right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.'"
We conclude, as did the trial judge, that defendant was negligent in failing to ascertain that the way was clear before attempting to make a left turn, and in failing to give a timely and proper signal to other motorists of his intention to do so. His negligence constituted a proximate cause of the accident.
Defendant contends, however, that plaintiff was guilty of contributory negligence in that he did not blow his horn or give a warning signal before attempting to pass defendant's car. The evidence relating to that fact is conflicting. The trial judge apparently concluded that plaintiff blew his horn, but held that the signal given by him of his intention to pass defendant was an inadequate compliance with the law in that *851 it was not sufficiently audible nor timely. For that reason, and because of the fact that plaintiff attempted to pass defendant near the entrance to the shipyard, the trial court held that plaintiff was guilty of contributory negligence and was barred from recovering. We agree with the trial judge in his findings of fact, but we are compelled to disagree with him in his conclusion that these facts constitute contributory negligence on the part of the plaintiff.
The evidence establishes that at the time plaintiff started to pass defendant's car, the latter was in its right or the east-bound lane of traffic, and plaintiff's truck was in the opposing or west-bound lane. Under those circumstances it was not necessary for plaintiff to blow his horn or to forewarn defendant of his intention to pass, since plaintiff was in a separate lane of traffic and the passage did not require that defendant move to the right in order to afford a clear path for the movement of plaintiff's vehicle. LSA-R.S. 32:233, subd. B; Martin v. Globe Indemnity Co., La.App., 64 So.2d 257; Mooney v. American Automobile Ins. Co., La.App., 81 So.2d 625; Benenate v. Brooks, La.App., 95 So.2d 757; Marrero v. Richard, La.App., 98 So.2d 305; and Desormeaux v. Southern Farm Bureau Cas. Ins. Co., La.App., 108 So.2d 672, 674.
In the recent case of Desormeaux v. Southern Farm Bureau Casualty Insurance Co., supra, we said:
"We are also of the opinion that Mrs. Desormeaux pulled from the right hand lane behind the truck into the left lane in order to pass, and at the time the truck was still in its right hand lane of travel. Under such facts there was no necessity under the law cited by counsel for defendant as interpreted by the jurisprudence for the driver of plaintiff's car to blow her horn."
The trial judge also assigned as one of his reasons for finding plaintiff guilty of contributory negligence that he attempted to overtake and pass defendant at the point where the entrance road to the shipyard intersects the highway, plaintiff having acknowledged that he was familiar with the location of this entrance and that from the time he left Patterson he had followed vehicles transporting persons to work at the shipyard.
The entrance from the highway to the shipyard was described by plaintiff as being 10 or 12 feet wide, and by other witnesses as being 10 or 15 feet wide, or as being "pretty wide, as big trucks go through there." The State Trooper who investigated the accident described its width as, "10 or 12 feet wide, just an opening, it is not too wide." The evidence seems to establish, therefore, that this entrance road was relatively narrow, compared to the width of the highway, and since there is nothing to indicate that it was a public road, we assume that it was privately owned.
Under the provisions of LSA-R.S. 32:233, subd. E, the driver of a vehicle is prohibited from overtaking and passing another vehicle proceeding in the same direction at an intersection of the highway, and the jurisprudence of this State has been established to the effect that a driver's conduct in attempting to pass an automobile at an intersection of highways constitutes negligence. In this case, however, we classify the entrance to the shipyard as a private driveway rather than a public highway, and we conclude that plaintiff did not endeavor to overtake and pass defendant at an "intersection of the highway," in violation of the provisions of LSA-R.S. 32:233, subd. E.
In our opinion plaintiff would not be guilty of contributory negligence even if we should be in error in assuming that the entrance to the shipyard was a private road, because the size and location of that entrance was such that a driver of a vehicle on the highway might reasonably assume that it was a private rather than a public road. Also, the fact that another vehicle had just overtaken and passed defendant, that no signal had been given by defendant indicating that he intended to make a left *852 turn, and that plaintiff was not aware of defendant's employment at the shipyard, convinces us that plaintiff was justified in assuming that he could safely overtake and pass defendant's car at that point.
In Brown & Williamson Tobacco Corp. v. Baumgardner, La.App., 92 So.2d 107, 108, we held that the overtaking driver was not negligent in attempting to pass another vehicle at a junction of a parish gravel road and a highway, where the following circumstances existed:
"The gravel road itself was not marked in any way, nor were there any yellow lines along the center line of the highway in the vicinity of the intersection, and the road itself was not only difficult to discern from the highway but there was nothing to differentiate it from a private road."
A similar opinion was expressed by the Court of Appeal, Second Circuit, in the case of Dudley v. Surles, La.App., 11 So.2d 70, 73, where the court said:
"The trial judge held, as shown by his written opinion, that the locus of the collision could not be termed the intersection of a highway, so as to make applicable the quoted statutory provision, because the dirt road running east and west is not clearly defined and there is nothing to distinguish it from the ordinary plantation crossing. The evidence sustains his finding and holding. In this connection it may be further observed that the road on the east side runs only a short distance to the plantation home and serves merely as a driveway to that dwelling, as before shown, while on the west it is narrow and courses through the plantation.
"Therefore, we are of the opinion that Miss Huff was not guilty of negligent operation of the Pontiac (the overtaking vehicle) and that the sole and proximate cause of the collision was the gross negligence of Charles Surles in maneuvering the truck as he did."
We conclude that plaintiff, Babineaux, was not guilty of contributory negligence, and that he is entitled to recover from defendant the amount of the damages he sustained as a result of this accident. The evidence establishes that the cost of repairing the resulting damages to Babineaux's truck was $242.36.
For the reasons assigned, that portion of the judgment appealed from which rejects plaintiff's demands is reversed, and accordingly it is ordered, adjudged and decreed that judgment be rendered in favor of plaintiff, George Babineaux, and against defendant, Anderson Sims, for the sum of $242.36, with legal interest thereon from date of judicial demand until paid, and for all costs of this suit, including the cost of this appeal. That portion of the judgment appealed from which rejects the demands of plaintiff-in-reconvention, Anderson Sims, is affirmed.