HARDY, Judge.
This is an action by husband and wife for the recovery of damages resulting from an automobile collision, and defendant insurance company appeals from judgment in favor of plaintiffs.
The accident occurred on July 21, 1963, on U. S. Highway 171 at approximately 6:30 P.M. at a point a short distance north of the Town of Benson in De Soto Parish. A Plymouth sedan being driven by plaintiff wife, headed south, was turning to the left across the highway for the purpose of entering a private driveway and was struck from the rear by a Chevrolet Corvair driven by Raymond D. Green. Title of ownership to the Corvair automobile was shown to be in the name of Mrs. Maggie Green, grandmother of the driver, Raymond D. Green. However, the car was insured by State Farm Fire & Casualty Company under a policy issued to the said Raymond Green. It is noted that, due to an error in pleading, judgment was rendered against State Farm Mutual Automobile Insurance Company, although State Farm Fire & Casualty Company is the real defendant.
The point of impact occurred on the east side of the highway at the entrance into a private road or drive leading to the Ail-stock residence. At this point the highway is straight and level for a substantial distance in either direction. To the north of the point of collision at a distance not definitely established by any evidence in the record but estimated to be within the limits of three to four hundred yards, there is a curve in the road.
Prior to the collision Mrs. Ailstock was driving at a rather slow rate of speed in her right-hand lane of the highway approaching the point at which she intended to make a left turn into the drive leading to her residence. The Green car, rounding the curve to the north in its right-hand lane of travel, pulled into the left or east lane for the purpose of passing the slower moving Ailstock automobile. At a time when the interval between the two cars had decreased to about two to four car lengths, Mrs. Ailstock turned across the center of the highway and was struck in the rear by the Corvair vehicle.
At the situs of the collision the highway is paralleled by the K. C. S. Railway track on the east side and the railway crossing traversing the Ailstock driveway was marked by railway crossing signs, both east and west of the crossing in accordance with law. However, the highway was not marked by any road intersection sign, nor was there any indicated prohibition against passing at this point.
Plaintiffs charged negligence against Green; (1) in failing to have his vehicle under control which would permit him to stop after a left turn signal was given by Mrs. Ailstock; (2) in failing to keep a proper lookout; and (3) driving at an excessive rate of speed under the circumstances.
After denying plaintiffs’ charges of negligence, defendant alternatively pleaded acts of negligence constituting a proximate or contributing cause of the collision against Mrs. Ailstock in (a) failing to keep a proper lookout; (b) attempting to make a left turn when such an operation was not safe; and (c) failing to give an adequate and timely signal of the intention to make a left turn.
The only eye witnesses to the accident were Mrs. Ailstock, driver of the Plymouth car, Green, driver of the Corvair, and his two companions, Tony Gibson and Kenneth Kemp. The three young men, Green, Gibson and Kemp, members of a National Guard unit, were en route from their homes in Arkansas to Camp Polk at Leesville.
As observed by the trial judge in his written opinion, the testimony of Mrs. Ailstock was “quite confusing.” After careful and repeated reading of Mrs. Ailstock’s testimony, we think the above observation is an under-statement. Counsel for defendant *650 found it not only extremely difficult but, at times, impossible on cross-examination to obtain definite answers to simple and direct questions. Despite the efforts of the trial judge, which included the granting of a brief recess in order that plaintiff’s counsel might instruct this witness as to the necessity of answering the questions of opposing counsel, the difficulty was not overcome and her testimony continued to be vague, uncertain and confusing. The gist of Mrs. Ailstock’s testimony was that while moving on the right side of the highway she observed the approach of the Green automobile from the rear as it rounded the curve to the north, saw it move into the left lane, despite which action, and without making any further observation, she engaged in making a left turn across the highway. Mrs. Ailstock did testify positively that she gave a left-turn hand signal and applied her brakes but she did not give any definite testimony as to when these actions were taken with respect to her position on the highway and the distance from the drive into which she intended to turn. The testimony as to the giving of a left-turn signal by Mrs. Ailstock is conflicting. Mrs. Ailstock testified that she gave a signal by extending her left arm out of the window. This was denied by Green who further testified that after the accident he found the left front window of the Ail-stock car was closed. For some reason, the district judge sustained an objection to the testimony of Gibson as to the condition of the window, whether open or closed, following the accident.
The testimony of young Green, driver of the Corvair, squarely contradicted that of Mrs. Ailstock, for this witness testified that he was driving at approximately 60 miles per hour, pulled into the left lane for the purpose of passing the slower moving car ahead of him, saw no signal of a turn by the driver and was first warned of the development of danger by the flashing of the brake lights and the actual turning of the Ailstock car into the left lane of the highway, at which time he was too close to avoid the collision. This testimony was substantially corroborated by Gibson who was seated on the front seat of the Corvair to the right of the driver. It was also stipulated by counsel that the testimony of young Kemp, if he had been present on trial or if his deposition had been taken, would be essentially the same as that of Gibson with respect to all pertinent facts related to the issues involved in this suit.
We find nothing in the record which impugns the credibility of Green or Gibson, and in view of this fact, and in further consideration of the stipulation that Gibson’s testimony would have been supported by that of Kemp, the other witness, we are firmly convinced that the evidence definitely preponderates in favor of defendant.
The burden of caution which is imposed, both by statute and jurisprudence, Upon a motorist making a turn, particularly a left turn, on a highway, is so firmly established that it requires neither comment nor discussion. One of the elements of this obligation of care requires the operator of a vehicle, aware of the presence of an overtaking automobile, to keep and maintain a lookout for the purpose of ascertaining that the turn can be made in saftey. This principle was clearly enunciated in the comparatively recent case of Crane v. London (2nd Cir., 1963), La.App, 152 So.2d 631. The general principles applicable to both left turning and overtaking vehicles and the respective obligations imposed upon each were clearly summarized in Babineaux v. Sims (1st Cir., 1959), La.App, 111 So.2d 848.
In the case before us there can be no question as to the obligation upon Mrs. Ailstock, after observing the overtaking automobile at a substantial distance to the rear, to continue to keep such vehicle under direct observation. Her failure to discharge this obligation, imposed by common sense as well as jurisprudence, in our opinion constituted gross negligence and was *651 the direct and proximate cause of this accident. This conclusion is amply supported by the testimony of Mrs. Ailstock herself, who quite plainly testified that the car approaching from the rear was driving “ * * * as fast as he could go * * and that “ * * * he never whipped to the right like anybody else would do.” We think it is clear that Mrs. Ailstock, without keeping the approaching car under observation and despite her testimony of an excessive rate of speed by the following car, expected the driver to “whip” to the right and avoid colliding with her car which she was turning directly across its path.
We further note in the opinion of the district judge that, although he conceded that the Ailstock driveway, which he designated as the “Ailstock Road”, might not be considered an intersection within the meaning of the Motor Vehicle Statute, LSA-R.S. 32:76, nevertheless, he was of the opinion that the railroad crossing signs to the east of the highway should have warned Green that this might indicate a “highway crossing.” We do not think this conclusion is justified, nor, even if it were, that it would constitute an element of negligence on the part of Green.
We cannot find that the evidence supports a finding of negligence on the part of Green in any particular. According to his testimony and that of his companions, he was not driving at an excessive rate of speed under the circumstances; he was keeping a proper lookout, and he was engaged in an ordinary passing movement which he had every reason to believe could be undertaken and completed without difficulty.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and,
It is now ordered, adjudged and decreed that there be judgment in favor of defendant and against plaintiffs rejecting their demands, together with all costs of both courts.