HOOD, Judge.
Plaintiffs, Mr. and Mrs. Melvin Merritt, instituted this suit for damages primarily for personal injuries sustained by Mrs. Merritt as the result of a collision between an automobile being driven by the latter and a pickup truck being driven by Donnie R. Walker. The suit was instituted against Southern Farm Bureau Casualty Insurance Company, the insurer of the Walker truck. The defendant answered and, as subrogee of the owner of the Walker truck, it filed a reconventional demand for damages to that truck. Judgment on the merits was rendered by the trial court in favor of plaintiffs, awarding damages to plaintiffs and rejecting defendant’s reconventional demand. Defendant has appealed.
The accident occurred about noon on March 6, 1965, on Louisiana Highway No. 6, in Sabine Parish, Louisiana. The highway at that point runs east and west, and it is straight and level. It is a blacktopped highway, the hard surfaced portion of it being 22 feet wide. At the time of the accident the weather was clear and the surface of the highway was dry.
Shortly before the accident occurred Mrs. Merritt was driving her family compact automobile, a Volvo, in an easterly direction on that highway. She was alone in the car at that time, and she was en route to her son’s home which was located north of the highway. Donnie R. Walker was driving his father’s Dodge pickup truck in the same direction, behind the Merritt car, and there were two passengers in the truck with him. When Mrs. Merritt reached the private driveway leading from the north edge of the highway to her son’s home she turned her car to the left to enter that driveway. While she was in the process of making that turn, the left rear portion of her car was struck by the front of the Walker truck. The collision occurred in the west-bound lane of traffic, near the center line of the highway.
The only eye witnesses to the accident were the drivers of the vehicles involved in it and the two passengers who were in the Walker truck.
Mrs. Merritt testified that prior to the collision she was driving her automobile at a speed of 30 to 35 miles per hour, that when she was more than 700 feet from *596 her son’s driveway she turned on her directional signal lights indicating that she intended to make a left turn, and that her turn signal remained on from that time until the collision occurred. She stated that she applied her brakes and began to reduce her speed after she had completed crossing a bridge, the east end of which bridge is 375 feet west of the driveway leading to her son’s home, and that she was traveling at a speed of about 15 miles per hour when she reached a point 114 feet from that driveway. She further testified that when she was 114 feet from the driveway she looked in her rear view mirror and saw the Walker truck approaching from the rear, in its right lane of traffic, and at that time she noted that the truck was about 700 feet from the driveway, or about 586 feet behind her.[1] She concedes that she could not tell the speed at which the truck was being driven, but she concluded that she had sufficient time within which to complete a left turn safely. Her testimony is that that was the only time she looked for or observed traffic approaching from the rear, that she did not look into her rear view mirror again, and that she “drove a little further” in her right, or the eastbound, lane of traffic and then started to make her left turn. She stated that her car was facing in a northeasterly direction, at a 45 degree angle, and that the front wheels of her car were on the shoulder of the highway, when she was struck by the truck.
Donnie Walker testified that just prior to the accident he was driving his father’s truck at a speed of between 50 and 60 miles per hour, and that he had observed the Merritt car ahead of him for a distance of about one-half mile before the collision occurred. He stated that shortly after he crossed a bridge, located 375 feet west of the driveway into which Mrs. Merritt attempted to turn, he crossed into his left, or the west-bound, lane of traffic in order to overtake and pass the Merritt car. He testified that while he was in that lane of traffic, preparing to pass the automobile ahead of him, and when the Merritt car was 103 feet from the driveway, he saw the brake lights of that car come on and that he then attempted to bring his truck to a stop, but that Mrs. Merritt suddenly turned to her left, across the west-bound lane of traffic, directly in the path of his truck, and that he was unable to avoid a collision. He stated that Mrs. Merritt did not have her directional signal lights on at any time before the collision occurred. His testimony is verified by that of the two passengers who were in the truck with him.
The evidence shows that the Walker truck skidded a distance of 153 feet up to the point of impact, and that the truck came to a stop within three or four feet after striking the car. Photographs taken three days after the accident, and the testimony of witnesses, show clearly that all four wheels of the truck were in the westbound, or passing, lane of traffic during practically all of the distance that the truck skidded. The Merritt car came to rest several feet north of the highway and east of the private driveway.
No finding was made by the trial judge as to whether Mrs. Merritt turned on her directional signal light or gave a left turn signal of any kind before the accident occurred. Also, no determination was made as to whether the Walker- truck was being driven at a speed in excess of the legal speed limit, or in excess of the speed estimated by the driver, although the judge did conclude that the truck “was traveling at a high rate of speed at the time he applied the brakes.”
The trial judge found that the driver of the truck did not apply his brakes until *597 he saw the brake lights of the Merritt car flash on, and that the truck was straddling the center line of the highway when its brakes were first applied. He reasoned that if the truck driver had been following the Merritt car at a reasonable speed and at a safe distance he would have been able to stop and thus avoid a collision after he became aware of the fact that Mrs. Merritt had applied her brakes. He concluded that in view of the fact that the truck collided with the automobile, the driver of the truck “was following the Merritt vehicle at a high rate of speed and too closely under the circumstances, or he did not maintain a proper lookout and sufficient control of his vehicle.” He held that in either event the driver of the following vehicle was negligent.
The evidence convinces us that Mrs. Merritt did not turn on her directional signal lights or give a left turn signal of any kind before the accident occurred. All of the occupants of the following truck testified that they did not see a turn signal at any time, but that they did see the brake lights of the Merritt car flash on when the car was about 103 feet west of the driveway where the accident occurred, and that Walker forcefully applied the brakes of the truck immediately after these brake lights came on. The fact that Walker reacted promptly when the brake lights came on indicates that he would have reacted with equal promptness to a directional signal light if such a light had been turned on.
All three of the occupants of the truck testified that the truck was being driven at a speed of between 50 and 60 miles per hour as it approached the point where the accident occurred, and there is no testimony to the effect that it was being driven at a faster rate of speed. Mrs. Merritt stated that she was unable to determine how fast it was traveling when she observed it in her rear view mirror. The trial judge did not hold that the truck was being driven faster than the speed estimated by the witnesses, but he did find that it was traveling “at a high rate of speed.” He arrived at that conclusion after considering the extent of the damages which were done to the two vehicles and the skid marks which were left by the truck. The cost of repairing the damage to the compact automobile being driven by Mrs. Merritt was $265.00, and the truck sustained damages amounting to $439.92. Neither vehicle turned over as a result of the collision, and as we have pointed out, the truck came to a stop within three or four feet after the collision occurred. We have considered the amount of damages sustained by the vehicles, the photographs which were taken of such vehicles after the accident occurred, the skid marks left by the truck and all of the other evidence which was presented relating to the occurrence of the accident, and we are convinced that the truck was not being driven at a speed in excess of 50 or 60 miles per hour, as stated by the witnesses, and that such a speed was reasonable under the circumstances.
The trial judge observed, and we agree, that under our law the driver of a motor vehicle is prohibited from following another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and condition of the highway. LSA-R.S. 32:81 (A) and Burns v. Evans Cooperage Company, 208 La. 406, 23 So.2d 165.
The above stated rule, however, does not prohibit a motorist from overtaking and passing a vehicle which is being driven in the same direction ahead of him. On the contrary, the law specifically authorizes the driver of a motor vehicle on a public highway to overtake and pass other vehicles on that highway, and it sets out rules to be followed by the motorists in executing such a passing maneuver. See LSA-R.S. 32:72-32:81 incl. Particularly appropriate to the *598 issue presented here is LSA-R.S. 32:75, which provides:
“No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction. Acts 1962, No. 310, Section 1.”
The facts and issues in the instant suit are almost identical with those which were presented in Ailstock v. State Farm Mutual Automobile Insurance Company, 190 So.2d 648 (La.App.2d Cir. 1966), and in McCann v. Mercer, 191 So.2d 150 (La.App.3d Cir. 1966). In the Ailstock case the overtaking motorist, Raymond D. Green, while driving at a speed of 60 miles per hour, pulled into the left lane of traffic for the purpose of passing the slower moving Ailstock automobile. He had no indication that Mrs. Ailstock intended to make a left turn until he saw her brake lights flash on shortly before the left turn was begun. Green attempted to bring his automobile to a stop when he saw the brake lights come on, but he was unable to do so and a collision occurred when Mrs. Ailstock turned to her left. The Second Circuit Court of Appeal held, correctly we think, that the sole proximate cause of the accident was the negligence of Mrs. Ailstock in making a left turn in front of the overtaking motorist, and that the passing motorist was free from negligence. In so holding, the court said:
“We cannot find that the evidence supports a finding of negligence on the part of Green in any particular. According to his testimony and that of his companions, he was not driving at an excessive rate of speed under the circumstances; he was keeping a proper lookout, and he was engaged in an ordinary passing movement which he had every reason to believe could be undertaken and completed without difficulty.”
In McCann v. Mercer, supra, the plaintiff was traveling about 60 miles per hour when he moved into his left lane of traffic for the purpose of overtaking and passing defendant’s slower moving vehicle ahead of him. While plaintiff was engaged in this passing maneuver, the driver of the overtaken vehicle gave a left turn signal and then proceeded to turn to his left and a collision occurred. We held that the sole proximate cause of the accident was the negligence of the left turning driver and that the passing motorist was free from negligence. In that case, we said:
“We are of the opinion that the trial judge was in error in finding plaintiff contributorily negligent. Plaintiff testified he was traveling about 60 miles per hour when he saw the defendant traveling at a considerably slower speed; the highway being clear, defendant moved into the passing lane when he was 298 feet from the driveway, at which time he was about 166 feet to the rear of defendant’s automobile, and defendant’s automobile in turn was about 132 feet from the driveway. The defendant put out his left arm for a left turn signal. At 60 miles per hour, plaintiff was going approximately 90 feet per second, which means that he was about' 3 seconds away from the driveway. Under the circumstances, we are of the opinion that plaintiff could not or should not have discovered defendant’s dangerous situation in time to avoid the accident. Therefore, we find no negligence on his part.”
And, in Wesley v. Home Indemnity Company, 245 La. 133,157 So.2d 467 (1963), our Supreme Court found that the passing motorist was free from negligence under facts and circumstances similar to those presented here. See also Garris v. Jabbia, 179 *599 So.2d 486 (La.App.3d Cir. 1965) ; Fulgium v. Lamb, 179 So.2d 676 (La.App.2d Cir. 1965); Cruse v. Greer, 180 So.2d 547 (La.App.3d Cir. 1965).
The evidence in the instant suit shows that the highway where the accident occurred was straight and level, visibility was good, the left side of the highway was clearly visible and free of oncoming traffic, there were no road intersections ahead, and when Walker began his passing maneuver there appeared to be no reason why he could not overtake and pass the slow moving vehicle ahead of him safely and without interfering with the safe operation of any other vehicle. He was driving the truck at a reasonable rate of speed, and when he committed himself to the passing maneuver he had no reason to anticipate that the driver of the overtaken car would suddenly make a left turn. As soon as it became apparent that Mrs. Merritt intended to make a left turn, Walker tried to bring his truck to a stop, but he was unsuccessful in avoiding a collision. The evidence convinces us that the driver of the Walker truck was free from negligence. We conclude, therefore, that the trial court erred in finding that he was negligent.
We turn now to the issue of whether-Mrs. Merritt was negligent and, if so, whether her negligence was a proximate cause of the accident.
According to Mrs. Merritt’s own testimony, she looked in her rear view mirror only one time before she began her left turn, and she did this when she was 114 feet west of the driveway leading to her son’s home. She stated that at that time she saw the Walker truck about 584 feet behind her, and that she thereupon continued to travel in the east-bound lane of traffic a distance of at least 100 feet at a slow rate of speed and then, without making any further check of oncoming traffic, she proceeded to turn to her left. It is obvious that at the time she made the left turn it was not safe for her to do so, because a collision occurred before she was able to cross the west-bound lane of traffic, which was only 11 feet wide.
A left turn on a public highway is a dangerous maneuver, and a left turning motorist is charged with the duty of ascertaining before the turn is attempted that it can be made in safety. Washington Fire and Marine Ins. Co. v. Firemen’s Ins. Co., 232 La. 379, 94 So.2d 295 (1957); and Babineaux v. Sims, 111 So.2d 848 (La.App. 1st Cir. 1959). When a motorist who intends to make a left turn becomes aware of the presence of a following or overtaking motorist, even though the latter is a substantial distance behind him, he is required to maintain a lookout for that motorist and all other traffic on the highway, and to look to his rear again, immediately before the left turn is attempted, to ascertain whether it can be negotiated safely. Wesley v. Home Indemnity Company, supra; Fulgium v. Lamb, supra; Ailstock v. State Farm Mutual Automobile Insurance Company, supra; McCann v. Mercer, supra.
In Ailstock v. State Farm Mutual Automobile Ins. Co., supra, our brothers of the Second Circuit Court of Appeal appropriately held:
“In the case before us there can be no question as to the obligation upon Mrs. Ailstock, after observing the overtaking automobile at a substantial distance to the rear, to continue to keep such vehicle under direct observation. Her failure to discharge this obligation, imposed by common sense as well as jurisprudence, in our opinion constituted gross negligence and was the direct and' proximate cause of this accident.”
And in McCann v. Mercer, supra, we said:
“As to the defendant, by his own testimony it is apparent that he did not exercise a proper lookout. Although he knew of the vehicle approaching from the rear, he did not look to the rear immediately before attempting to turn left. If the defendant had looked immediately before *600 attempting the left turn, he would have known that the McCann automobile was in the process of rapidly overtaking him, and that a left-hand turn at the moment would cause an accident. His failure to look immediately before turning was negligence which had a causal connection with the accident.”
Our conclusion is that Mrs. Merritt was negligent in failing to maintain a .proper lookout, in failing to look to her rear immediately before making a left turn to determine whether such a maneuver could be made safely and in turning to her left on a public highway directly in the path of a passing motorist. In our opinion her negligence in these respects was the sole proximate cause of the accident.
We find no merit to plaintiff’s argument that the driver of the Walker truck had the last clear chance to avoid the accident. We have already pointed out that Walker could not avoid the accident after he observed, or should have observed, that the driver of the Merritt car intended to make a left turn into the private driveway.
In view of our finding that the driver of the Walker truck was free from negligence, that he did not have the last clear chance to avoid the accident,- and that the sole proximate cause of the accident was the negligence of Mrs. Merritt, it necessarily follows that the judgment rendered by the trial court must be reversed, that the demands of plaintiffs must be rejected and that judgment should' be rendered in favor of plaintiffs-in-reconvention, Southern Farm Bureau Casualty Insurance Company, and against defendant-in-reconvention, Melvin Merritt, in the sum of $389.92, with legal interest thereon from date of judicial demand until paid, and for all costs of this suit.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered rejecting the demands of plaintiffs, Mrs. Edlee Merritt and Melvin Merritt, and dismissing the suit filed by them at their costs. Judgment further is rendered in favor of plaintiff-in-reconvention, Southern Farm Bureau Casualty Insurance Company, and against the defendant-in-reconvention, Melvin Merritt, for the sum of $389.92, with legal interest thereon from date of judicial demand until paid, and for all costs of this suit. The costs of this appeal are assessed to plaintiffs-appellees.
Reversed and rendered.

. She determined these distances by going to the scene of the accident eight or nine months after it occurred, and while there she located the point where she remembered that her automobile was when she first looked in the rear view mirror, and then she measured the distances from that point to the driveway and to the place where she remembers seeing the Walker truck.