313 So.2d 872 (1975)
Joseph Eldon BAMBURG and Donna M. Bamburg, Plaintiffs-Appellants,
v.
Ada Y. NELSON et al., Defendants-Appellees.
No. 12607.
Court of Appeal of Louisiana, Second Circuit.
June 3, 1975.
Rehearing Denied July 1, 1975.
Writ Refused September 19, 1975.
*873 Gahagan & Gahagan by Russell E. Gahagan, Natchitoches, for plaintiffs-appellants.
Mayer, Smith & Roberts by Paul R. Mayer, Shreveport, for Hartford Acc. and Indem. Co., defendant-appellee.
Horton & Jones by William R. Jones, Coushatta, for Alfred Wilson, defendant-appellee.
Cook, Clark, Egan, Yancey & King by Herschel E. Richard, Jr., Shreveport, for Aetna Cas. and Surety Co., defendant-appellee.
Before BOLIN, HALL and MORRIS, JJ.
MORRIS, Judge.
This suit is brought by Mrs. Donna M. Bamburg to recover for personal injuries which she received in an automobile accident which occurred on May 18, 1974, on Louisiana Highway No. 7 in Red River Parish, Louisiana. She is joined in this suit by her husband, Joseph E. Bamburg, who seeks to recover for damages to the automobile his wife was driving and medical expenses which he incurred as a result of the accident.
Louisiana Highway No. 7 is a two-lane blacktopped highway running in a general north-south direction, and at the point where the accident occurred same is straight and level. The accident occurred in the late afternoon, weather conditions were dry and visibility was good. Mrs. Bamburg was proceeding in the northbound lane following three vehicles, the first vehicle in front of her being operated by an unknown driver and the second vehicle being operated by a Mr. William Peters. The third vehicle in front of Mrs. Bamburg was being operated by the defendant, Ada Y. Nelson, and was owned by the defendant, Alfred Wilson. Mrs. Bamburg, ascertaining that there was no oncoming traffic, pulled into the southbound lane with the intention of passing the three vehicles preceding her. She successfully passed the first two vehicles in front of her, but collided with the pickup truck being driven by Mrs. Nelson who was making a left turn off of the highway into a private driveway. The front of Mrs. *874 Bamburg's vehicle, a 1970 Plymouth, hit the left side of the Nelson vehicle broadside or at about the junction of the cab and the bed of the truck, the Nelson pickup truck being perpendicular with the road at the time of the impact.
Made parties defendant to this matter were Ada Y. Nelson, the owner of the truck she was driving, Alfred Wilson, Hartford Accident and Indemnity Company and Aetna Casualty and Surety Company. There was no liability insurance coverage on the Wilson pickup truck and Hartford is made a defendant on a liability insurance policy issued to James E. Bryant, the step-father of Mrs. Bamburg. Aetna is made a party under a liability insurance policy issued to Joseph Eldon Bamburg. Plaintiffs claim that both of said insurance companies are liable to them under the uninsured motorist provisions of the respective policies. The trial court found that the cause of the accident was the excessive speed of the plaintiff, Mrs. Bamburg, and accordingly dismissed plaintiffs' suit. Plaintiffs have taken this appeal from the judgment of the trial court. The issues are whether Mrs. Nelson was negligent, and, if so, whether Mrs. Bamburg was contributorily negligent.
Although the driver making a left turn who is involved in an accident is not deemed ipso facto negligent, the cases which characterize the manuever as dangerous and setting forth the duty of the left-turning vehicle are numerous. The duty of the left-turning motorist is two-fold, the first being to give a proper signal, and secondly to make proper observation that the turn can be made without endangering an oncoming or overtaking vehicle. See Lewis v. Liberty Mutual Insurance Company, 215 So.2d 138 (La.App.3rd Cir. 1968). A left turner must not only give an adequate signal of his intention but also make adequate observation to his rear to ascertain that the turn can be safely made. Ardoin v. Chachere, 207 So.2d 574 (La.App.3rd Cir. 1968).
Although Mrs. Nelson may have complied with the first duty imposed upon her by law in giving a signal, she did not, in our opinion, fulfill the second dutythat of making proper observation and keeping a proper lookout. Mrs. Nelson testified that she did look in her rear view mirror. However, she did not see the Bamburg vehicle and did not even know of its presence until she heard the squealing of the brakes on the Bamburg vehicle. It is true that at the time Mrs. Nelson first intended to turn left the Bamburg vehicle may have been obscured by the two vehicles between them, but it was nevertheless her duty to maintain observation to her rear up to the time she started the left turn. One who observes a vehicle approaching from the rear must maintain observation thereof up to the left turn maneuver and look immediately before turning. In Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) the Supreme Court of this state held that having observed the automobile approaching from the rear, a failure to look the second time before commencing a left turn maneuver was a dereliction of duty which had a causal connection with the accident. See also McCann v. Mercer, 191 So.2d 150 (La.App.3rd Cir. 1966) and Merritt v. Southern Farm Bureau Casualty Insurance Company, 199 So.2d 594 (La.App.3rd Cir. 1967). If it is the duty of the driver who discovers the vehicle approaching from the rear to maintain a lookout up to the time of the left turn, certainly it is the duty of the driver who has not discovered the vehicle approching from the rear to do the same, and looking but not seeing what can be seen is tantamount to not looking at all. In Lewis v. Liberty Mutual Insurance Company, supra, it was said:
"Therefore, by these decisions it can be seen that the duty of the driver of an overtaken vehicle if the driver had noticed, or should have noticed that his vehicle is being overtaken is to maintain not only a proper signal of the intention to turn, but also to maintain observance *875 of the overtaking vehicle up to the time in which the turn is made and at the time that the turn is made, the judgment of the driver that such turn can be made in safety must be that of a reasonable person in like circumstances." (Emphasis supplied) 215 So.2d at p. 141.
In Adams v. Travelers Indemnity Co., 277 So.2d 685, 687 (La.App.2nd Cir. 1973), decided by this court, it was also said:
"A motorist who attempts a left turn or who attempts to turn from a direct line on the public highways of the state must ascertain in advance that the turn can be made without endangering normal overtaking or oncoming traffic. The giving of a signal is not the only burden placed on the motorist for he must, in addition, check the rear immediately before the turn is attempted to ascertain whether it can be executed safely. See Wesley v. Home Indemnity Co., 245 La. 133, 157 So.2d 467 (1963); Johnson v. Wilson, 239 La. 390, 118 So.2d 450 (1960); Nain v. State Farm Mutual Automobile Insurance Co., 241 So.2d 792 (La.App.3d Cir. 1970); Hayes v. Travelers Indemnity Company, 213 So.2d 119 (La.App.3d Cir. 1968); Nugent v. Glover, 205 So.2d 129 (La.App.1st Cir. 1967); LSA-R.S. 32:104."
The duty of observation is the same both for the motorist who discovers the overtaking vehicle and the one who does not. Both have the duty of looking a second time immediately prior to beginning the left-turn maneuver, or even a third time, if necessary.
We find, therefore, defendant, Ada Y. Nelson, guilty of negligence which constitutes a legal cause of this accident.
A more difficult question concerns the alleged contributory negligence of Mrs. Bamburg which is pleaded in the alternative. Although Mrs. Bamburg testified that she was about even with the tailgate of the Nelson vehicle at the time the latter commenced the left turn, the preponderance of the evidence shows she was mistaken. Her vehicle left skid marks of approximately 114 feet prior to the impact, as measured by the State Trooper who investigated the accident and who so testified at the trial. Taking into consideration the reaction time, even for an automobile traveling 55 miles per hour, it is obvious that she was mistaken about her distance at the time the left turn maneuver was commenced. Had Mrs. Bamburg been even with the tailgate of the Nelson vehicle, she could not have hit the left-turning vehicle broadside or left the skid marks measured by the trooper.
The record shows that the only time Mrs. Bamburg looked at her speedometer was immediately before passing the first truck in front of her. At that time she was going 50 miles per hour, and it was her testimony that she slowed down somewhat and then began her passing movement. She admits that she accelerated some, but because of her first slowing down she estimates that her acceleration did not exceed 50 or 55 miles per hour. Her acceleration was apparently maintained in passing the first truck and then the second truck before she was confronted with the left turn maneuver of Mrs. Nelson. Mrs. Bamburg's testimony of speed based entirely on an observation made before she started accelerating to pass the line of three trucks ahead of her is unreliable. The State Trooper, based on his findings, estimated Mrs. Bamburg's speed at 70 to 75 miles per hour.
Although neither physical damage alone nor physical facts of the accident alone are enough to find excessive speed, Barrois v. Noto, 215 So.2d 676 (La.App.4th Cir. 1968) and Continental Insurance Company v. Duthu, 235 So.2d 182 (La.App.4th Cir. 1970), such facts have been used to make this determination considering the totality of the circumstances. In Dupree v. Baham, 252 So.2d 681 (La.App.1st Cir. 1971), the court held that a passing motorist was not negligent considering the relatively *876 light damage to the vehicles and the fact that the vehicle traveled only 12 to 15 feet after the impact. Thus it was said the physical evidence did not support the hypothesis that the passing motorist was speeding. On the other hand, in Miller v. Firemen's Insurance Company, 256 So.2d 649 (La.App.2nd Cir. 1972), the court held that skid marks of 94 feet was an indication that the passing motorist was negligent. In Segura v. Maryland Casualty Company, 284 So.2d 627 (La.App.3rd Cir. 1973), an accident reconstruction expert used the physical factsskid marks and distance traveled after impactto find excessive speed. Also, as in the present matter, the court found that from the physical facts the passing motorist could not have been the distance he testified at the time the left-turning vehicle commenced its maneuver. In Key v. Allstate Insurance Company, 255 So.2d 438 (La.App.1st Cir. 1971), the physical facts in the form of skid marks and distance traveled after impact were used to determine excessive speed.
In view of the apparent mistake of Mrs. Bamburg in concluding that her vehicle was about even with the Nelson vehicle at the time the left turn was commenced, and her unreliable estimate of speed, we must consider the physical facts. There was obviously a severe collision and extensive damage inflicted on both vehicles. This in itself indicates something in excess of the speed at which Mrs. Bamburg stated she was traveling. Excessive speed is also indicated by the 114 feet of skid marks made by her vehicle prior to impact. Furthermore, the State Trooper testified that the Nelson vehicle traveled 66 feet after the collision. The Bamburg vehicle faced south after the accident, the opposite direction in which it was traveling, and the trooper's report shows that it traveled 18 feet after the impact. There were approximately 10 feet of scuff marks made by the rear wheels of the Nelson vehicle according to the trooper's report. Considering these facts, and the reaction time necessary for Mrs. Bamburg to commence the "heavy" braking which she used in making the skid marks, convinces us that speed of the Bamburg vehicle was excessive and negligent.
Furthermore, the Nelson vehicle had slowed down to about 15 miles per hour preparatory to and in order to make the left turn. This necessitated some slowing down of traffic by the two trucks following her which Mrs. Bamburg subsequently passed. If Mrs. Bamburg had been keeping a proper lookout and observing all of the traffic conditions and had made a proper evaluation of same she should have at that point had some notice of impending danger. Passing a line of three vehicles without returning to the right side of the road is a dangerous maneuver and should be undertaken with extreme care and a complete awareness of all changes in traffic movements.
We cannot agree with the argument of counsel for plaintiffs that excessive speed of the Bamburg vehicle was not a proximate cause of the accident. That argument has to be based on an assumption that the Bamburg vehicle was even with the tailgate of the Nelson vehicle at the time the left turn was commenceda finding which we have already rejected. Mrs. Bamburg herself testified that she had time upon seeing the left-turning vehicle to react thereto, to apply her brakes and leave the heavy skid marks testified to by the State Trooper. The accident could have been averted but for the excessive speed of plaintiff's vehicle and Mrs. Bamburg would have been able to stop after observing the Nelson vehicle commencing the left turn. This same argument made by plaintiff was made in Segura v. Maryland Casualty Company, supra, and rejected by the court for the same reasons given herein.
Therefore, we find Mrs. Bamburg guilty of contributory negligence which bars recovery by plaintiffs.
*877 Defendant, Alfred Wilson, filed a Reconventional Demand in this matter against plaintiffs to recover the damages sustained by his truck which Mrs. Nelson was driving. This demand was answered by plaintiffs in the form of a general denial. Evidence was presented by Mr. Wilson on his claim and under Villars v. Faivre, 36 La.Ann. 398, 400 (1884), although the judgment of the trial court is silent on the disposition of the reconventional demand, it was an issue in the trial and must be considered as rejected in the absence of a special reservation. See also Soniat v. Whitmer, 141 La. 235, 74 So. 916 (1917); Garvin v. City of New Orleans, 270 So.2d 919 (La.App.4th Cir. 1972); Brady v. American Insurance Agency, 198 So.2d 907 (La.App.4th Cir. 1967); Reed v. Employers Mutual Liability Ins. Co. of Wis., 303 So.2d 506 (La.App.2nd Cir. 1974). Since Alfred Wilson did not appeal the judgment of the trial court or answer the appeal this court cannot consider his claim.
For the reasons herein assigned, the judgment of the trial court is affirmed at appellants' cost.