503 So.2d 624 (1987)
Henry HAMMER
v.
David E. COMBRE and New Orleans Public Service Inc.
No. CA-5710.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1987.
*625 John F. Greene, New Orleans, for plaintiff/appellee.
James Maher, III, New Orleans, for defendant/appellant.
Before BARRY, KLEES and LOBRANO, JJ.
LOBRANO, Judge.
This appeal arises out of a judgment rendered in favor of Henry Hammer (Hammer) and against New Orleans Public Service, Inc. (NOPSI) and its employee, David E. Combre (Combre) for personal injuries sustained by Hammer when his truck was struck by a NOPSI truck operated by Combre.

FACTS:
On October 4, 1984, Combre and Hammer were driving their respective trucks in a northerly direction on Highway 990 on the lower coast of Algiers. Hammer was following behind Combre. Combre was driving very slow. Hammer, realizing Combre was not going to increase his speed, applied his turn signal, changed lanes, blew his horn and began passing Combre on the left of the NOPSI truck. Just as the trucks were about even with each other, Combre turned left striking Hammer's truck on the right side causing Hammer to run off the highway into a ditch. Hammer sustained various injuries as a result of this collision.
The trial court found Combre 75% negligent for failing to exercise the high degree of care required of a left turning motorist and Hammer 25% negligent for failing to maintain a proper lookout, failing to observe what he should have observed and attempting to pass at an improper time.
The trial court awarded Hammer damages for personal injuries, lost wages and medical expenses in the amount of $6,687.00 less 25% for his comparative negligence plus legal interest and costs against NOPSI and Combre.
NOPSI and Combre appeal the trial court's judgment alleging that the law and the evidence clearly necessitate increasing the trial court's finding of Hammer's fault from 25% to 75%. We disagree.
In an attempt to persuade this Court that the trial court's judgment is manifestly erroneous, NOPSI and Combre provide a number of cases wherein the comparative fault attributed to the passing motorist was far greater than 25%. These cases are not persuasive. There is no fixed rule for the determination of what constitutes negligent conduct; the facts and environmental characteristics of each case must be considered and treated individually. Richardson v. Edwards, 219 So.2d 599 (La.App.4th Cir.1969). In cases involving issues of comparative fault, the trier of fact is required to make an allocation of percentage of fault to the responsible parties. In determining the percentage of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985).
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacity of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson, supra.
It is well settled that the allocation of comparative negligence is a factual matter lying within the discretion of the trial court, and such determination will not be disturbed on appeal in the absence of manifest error. Rawls v. Morris, 470 So.2d 531 (La.App.1st Cir.1985). When there is evidence before the trier of fact which upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest *626 error. In other words, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring, 283 So.2d 716 (La.1973). Further, in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), the Supreme Court amplified and further delineated the standard thusly:
"Manifestly erroneous in its simplest terms, means `clearly wrong'. We said, then, that the appellate court should not disturb such a finding of fact unless it is clearly wrong."
A review of the record and the trial court's reasons for judgment clearly establish that the law was properly applied to the facts established at trial and that the trial court's determination was not manifestly erroneous nor clearly wrong.
The left turn has long been characterized as a dangerous maneuver which must not be undertaken until the turning motorist ascertains that the turn can be made safely. If a collision occurs while he is attempting such a maneuver, the left turning motorist is burdened with a presumption of liability, and that motorist must show that he is free from negligence. Casimere v. Ryder Truck Rental, 324 So.2d 855 (La.App.4th Cir.1975), writ den. 329 So.2d 453; Plaisance v. Epherson, 466 So.2d 485 (La.App.5th Cir.1985).
The duty of a left turning motorist is two-fold: (1) to give a proper signal and (2) to make proper observation that the turn can be made without endangering an oncoming or overtaking vehicle. Bamburg v. Nelson, 313 So.2d 872 (La.App.2nd Cir. 1975), writ den. 318 So.2d 57. One who observes a vehicle approaching from the rear must maintain observation thereof up to the left turn maneuver and look immediately before turning. Bamburg v. Nelson, supra. In Gaspard v. LeMaire, 158 So.2d 149 (La.1963), our Supreme Court held that having observed the automobile approaching from the rear, a failure to look the second time before commencing a left turn maneuver, is a dereliction of duty which had a causal connection with the accident.
The standard of care established for overtaking and passing another vehicle traveling in the same direction provides that this motorist must first ascertain that the highway is clearly visible and free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. La.R.S. 32:75. The passing maneuver must be executed within the speed limit and at a point where passing is permitted. Passing a vehicle near an auxiliary road, be it business or residential, is not, in most instances, conduct falling below a proper standard. Kahoe v. State Farm Mutual Automobile Insurance Co., 349 So.2d 1345 (La.App.1st Cir.1977) writ den. 350 So.2d 1212.
A careful review of the record clearly shows that Combre breached his duty of care by failing to ascertain whether a left turn could be made safely. Combre failed to observe Hammer's truck and even more so, failed to look just before executing the left turn.
The trial judge found Hammer's negligence contributed to the cause of the accident by 25%. Combre suggests Hammer's negligence to be 75%. We disagree. Any negligence on Hammer's part in failing to observe Combre's left turn is far outweighed by the negligence of Combre. At all times pertinent, Hammer acted reasonably in light of the standards established by law for overtaking and passing other motorists. No evidence or testimony was introduced which would suggest that Hammer's visibility of approaching traffic was at any time obscured, nor did he ever exceed the speed limit. Hammer simply attempted to pass a slower moving vehicle on a straight stretch of highway. Hammer received no indication from Combre of his intent to execute the left turn nor was it reasonable to expect Hammer to foresee *627 that Combre might turn onto the auxiliary road not visible to approaching drivers.[1]
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Officer Byron Winbush who investigated the accident, testified that the gravel auxiliary road was obscured by a dense wooded area. There were no traffic markings to designate an intersection and the auxiliary road was not visible to approaching traffic.