581 So.2d 307 (1991)
Pamela M. WALTON and Lynwood N. Walton, Jr.
v.
Albon BELLARD, Jr. and Colony Insurance Company[*].
Consolidated with
Albon BELLARD, Jr. and Bellard Trucking, Inc.
v.
ALLSTATE INSURANCE COMPANY, Lynwood N. Walton, Jr. and Pamela M. Walton.
Nos. CA 90 0330, CA 90 0331.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
Writ Denied September 27, 1991.
*308 C. John Caskey, and Robert Kleinpeter, Baton Rouge, La., for plaintiff-appellee Pamela Walton, Lynwood Walton, Jr., and Allstate Ins. Co.
Stephen Edwards, Baton Rouge, La., and Robert Shelton, Lafayette, La., for defendant-appellant Albon Bellard, Jr., Presidential Fire & Cas. Co., and Bellard Trucking, Inc.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This tort action arises as a result of an accident that occurred as Mr. Bellard attempted to pass Mrs. Walton while she was making a left hand turn. From a judgment apportioning 75% of the fault to Mr. Bellard and awarding Mrs. Walton $30,000 in general damages, Mr. Bellard appeals.

FACTS
Pamela Walton, plaintiff, was driving an automobile, owned by Lynwood Walton, Jr., her husband, in a northerly direction on La. Highway 37. This is a two lane highway. Albon Bellard, defendant, had been following the plaintiff on this curvy road for approximately seven miles. While following the plaintiff, the defendant noted that she appeared to slow down and speed up on three occasions thereby giving him the impression that she may have been looking for something.
As the defendant rounded a curve and entered a passing zone, he proceeded to pass the plaintiff's slow-moving vehicle. Absent the illumination of her brake lights or a turn signal, the defendant assumed that it would be a good time to initiate the pass. He dropped back at a distance to gain enough speed to make the pass safely. As he approached the rear of the plaintiff's car at a speed of 45 m.p.h., he placed his left signal on and began to pull into the southbound lane to make the pass. When Bellard's truck and trailer were almost *309 completely in the southbound lane and almost to the rear of the plaintiff's car, the plaintiff unexpectedly proceeded to make a left turn into the obscure driveway that she had been looking for.
The plaintiff contends that she activated her left turn signal and looked in her rear-view mirror a distance before she approached the driveway. The driver of the vehicle that the plaintiff had been following corroborated the fact that the plaintiff activated her left signal before turning. The defendant contends that the plaintiff did not engage her left turn signal or, in the alternative, that plaintiff's rear left turn signal was not operating properly on the date of the accident. In fact, the driver of the truck who had been following the defendant testified that the plaintiff's rear left turn signal and brake lights never came on prior to the accident. There was testimony by other witnesses that support the defendant's contention that the light may not have been working properly on the day of the accident.
When the plaintiff began to make the left turn, she was broad-sided by the defendant and pushed into a nearby tree. The plaintiff was taken to the emergency room. She was diagnosed with a moderate severe cervical strain with a significant contusion and skull laceration, a mild cerebral concussion, and a contusion to the left knee. She was later diagnosed as having post-concussion syndrome and possible traumatic neurosis.
The Waltons sued Mr. Bellard and his insurer for damages for the injuries sustained by Mrs. Walton and the damage to their car. In addition, Mr. Bellard sued the Waltons and their insurer for the injuries sustained by him and for damage to his truck. These cases were consolidated for trial. The suit by Mr. Bellard settled prior to trial.

FINDINGS OF TRIAL COURT
The trial court found that both of the parties were at fault in causing this accident because of their failure to exercise reasonable care. Mr. Bellard followed the plaintiff long enough to determine whether back lights of the plaintiff's car were malfunctioning. Had this determination been properly made, he would have exercised extreme caution in attempting to pass the plaintiff as she slowed down for the third time. There was no way for the defendant to know what the plaintiff was going to do. Such a situation mandates that the passing driver sound the horn before attempting to pass.
The driver of the truck that the plaintiff was following testified that the plaintiff's left-front signal was engaged prior to the plaintiff's attempted turn. Based on this evidence, the trial court found more probable than not that the rear signal lights on the plaintiff's car were working. The trial court attributed the dislodging of the left-rear light fixture to the impact of the collision.
Based on the plaintiff's unfamiliarity with the location of the driveway, the court found that she probably utilized her turn signal in an untimely fashion. The plaintiff was aware that she was being followed by the defendant; therefore, she should have activated her left signal earlier. She was aware that the defendant dropped back and then sped up until he approached her from the rear once again. The accident could have been avoided had the plaintiff simply looked in her rearview mirror after the defendant had pulled into the southbound lane to pass.
Based on these findings of fact, the trial court apportioned 75% of the fault to Mr. Bellard and the remaining 25% to the plaintiff. In addition to awarding those special damages that had been stipulated to, the trial court awarded $30,000 in general damages. The judgment ordered that the award of damages be reduced by the plaintiff's percentage of fault. The defendant appeals the finding of liability and quantum.

ASSIGNMENTS OF ERROR
Bellard contends that the trial court erred in:

*310 1. finding him negligent in failing to sound his horn prior to attempting to pass;
2. apportioning only 25% of the fault to the plaintiff;
3. finding that the plaintiff's left rear blinker was working at the time of the accident; and
4. awarding excessive damages.

FAULT FINDING
The defendant contends that the trial court erred in finding that he was negligent in failing to sound his horn prior to initiating his passing maneuver.
The law sets forth the duties imposed on a left turning driver as well as a passing driver. The duties imposed upon the plaintiff, a left turning motorist, are found in La.R.S. 32:104. The plaintiff was required to give a signal of her intent to make a left turn at least 100 feet before reaching the private driveway. In addition to giving the proper signal, the plaintiff is required to make a proper observation that the turn can be made without endangering a passing vehicle. Bamburg v. Nelson, 313 So.2d 872, 875 (La.App. 2nd Cir.), writ denied, 318 So.2d 57 (La.1975). The plaintiff's failure to meet these duties does not automatically absolve the defendant from liability.
The law equally imposes a duty upon the passing motorist. This duty is specifically set forth in La.R.S. 32:73 and 75. A passing driver is not automatically required to sound his horn when executing a passing maneuver. The statute simply mandates that the passing driver sound his horn when the circumstances dictate that it is reasonably necessary for safe execution of a passing maneuver. In other words, the facts of a case dictate whether the passing driver had a duty to sound his horn. Doucet v. Ryder Truck Rental, Inc., 415 So.2d 618, 620 (La.App. 3rd Cir. 1982).
Generally, a passing driver does not have a duty to give an audible signal when the preceding vehicle is occupying its own lane of traffic, though traveling slowly. Soileau v. Hanover Insurance Company, 232 So.2d 128, 130 (La.App. 3rd Cir. 1970). The purpose of sounding the horn is to warn the overtaken driver to give the passing driver necessary clearance in which to complete his pass. The purpose of this duty is not to warn the overtaken driver not to turn left. Barber v. Sumrall, 206 So.2d 560, 561-562 (La.App. 1st Cir.1968).
In Hall v. Jackson, 215 So.2d 367, 369 (La.App. 2nd Cir.1968), the court held that the driver who was following a slow moving vehicle was entitled to pass where the preceding driver had not signaled his intent to make a left turn. It is unreasonable to require the following driver to anticipate that the preceding driver will make a left turn into an obscure private driveway based on the mere fact that the preceding vehicle was traveling slowly. Barber v. Sumrall, 206 So.2d at 562.
The trial court found that the circumstances of this case mandate that the defendant sound his horn prior to passing the plaintiff. During the 7 miles for which the defendant followed the plaintiff, he should have been able to determine whether the back lights of the plaintiff's car were malfunctioning. Had Bellard properly assessed the situation, he would have exercised extreme caution in attempting to pass the plaintiff since she had slowed down to 15 m.p.h. Since the defendant was unable to anticipate the plaintiff's actions, an audible signal was reasonably necessary for safe execution of his pass. In his exercise of extreme caution warranted by the situation, Bellard should have sounded his horn before attempting to pass.
There is ample evidence in the record to support the trial court's imposition of the La.R.S. 32:75 duty to give an audible signal prior to passing in this case. Since the defendant breached this duty, the trial court correctly found that the defendant was negligent.

FINDING OF FACT AS TO THE PLAINTIFF'S REAR LEFT SIGNAL
The defendant argues that trial court's finding that the plaintiff's rear left blinker was working at the time of the *311 accident is contrary to the evidence presented at trial.
A leading motorist has a duty to have the proper lights illuminated upon execution of a turn. See, La.R.S. 32:104. The scope of this duty encompasses the risk that a following driver may not be keeping a proper lookout. Webb v. Jordan, 540 So.2d 977, 979 (La.App. 2nd Cir.1989). The plaintiff testified that she activated her left signal prior to initiating her turn. This fact was supported by testimony given by the driver that was traveling 40 feet in front of the plaintiff. When he glanced into his left rear-view mirror, this witness observed that the plaintiff's front left turn signal had been engaged. This witness admitted that he did not know whether the rear left turn signal was working.
The defendant testified that in his final check prior to initiating the pass, neither the plaintiff's rear left turn signal nor brake lights were illuminated. The driver traveling behind the defendant also testified that the plaintiff's rear left signal and brake lights were never illuminated prior to making the turn.
Considerable evidence was presented at trial on the issue of the condition of the left rear light at the time of the accident. The plaintiff's husband testified as to the history of problems he had experienced with the left taillight fixture. The investigating officer testified that the plaintiff informed him that the rear taillights of her car were not working. The officer checked inside the trunk and found that the light was lying inside the trunk. The light was not plugged into the housing. The bulb was lying outside the fixture. The pictures that were introduced into evidence clearly show that the rear left taillight lens on the exterior of the car was not damaged in the accident. Due to the appearance of the housing, the officer testified that he did not think that it had been dislodged by the impact of the collision. This officer had the benefit of personal observation of the taillight assembly in reaching his determination of whether the impact dislodged the taillight from the fixture.
Despite the existence of the preceding evidence, the trial court found that the taillight had been dislodged upon impact of the accident. We find that the evidence clearly supports a contrary finding. The defendant collided into the rear left side just above the plaintiff's tire. Only the sides of the plaintiff's car were damaged in the collision. The rear end of the plaintiff's car did not sustain any damage. In fact, both taillight-lens were still intact following the accident. This fact combined with the testimony given at trial overwhelmingly supports the defendant's argument that the left taillight was not functioning properly at the time of the accident. The rear left housing was lying in the plaintiff's trunk. Assuming that the plaintiff had signaled her left turn, it was impossible for a following driver to observe the signal since it was illuminating inside the plaintiff's trunk. Therefore, we find that the trial court finding that the rear left taillight was functioning properly on the day of the accident is manifestly erroneous.

APPORTIONMENT OF FAULT
The defendant asserts that the trial court erred in allocating only 25% comparative fault to the plaintiff. It is well settled that the allocation of comparative negligence is a factual matter, and such determination will not be disturbed on appeal unless it is clearly wrong or manifestly erroneous. Varnado v. Continental Insurance Company, 446 So.2d 1343, 1345 (La.App. 1st Cir.1984).
In determining the percentage of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacity of the actor, whether superior or *312 inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967, 974 (La.1985).
Even though the plaintiff had been proceeding in a slow manner, the defendant had the right to believe that she would not make a sudden sharp left turn in front of him absent the use of a turn signal. A left turn is a dangerous maneuver. Such a maneuver should not be engaged in until the turning motorist ascertains the turn can be made safely. The plaintiff testified she was aware the defendant had been following her for a distance. She was aware the defendant had dropped back and then accelerated until he approached her once again. Having made this observation, it was the plaintiff's duty to look a second time immediately before attempting to make a left turn. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, 151 (1963). The plaintiff breached this duty of care.
After reviewing the record, we are satisfied that the trial court clearly erred in its allocation of only 25% of the fault to the plaintiff. Any negligence on Mr. Bellard's part in failing to sound the horn prior to attempting to pass and failing to anticipate a left turn by the plaintiff is outweighed by the plaintiff's negligence. Traveling within the speed limit, the defendant simply attempted to pass a slower moving vehicle at a point which allowed for passing. If her left turn signal was indeed engaged, the plaintiff's intent to execute a left turn was untimely conveyed or was never externally conveyed to Mr. Bellard. There was no way for Mr. Bellard to observe the light blinking in the trunk of the plaintiff's car. Furthermore, it was not foreseeable that the plaintiff would be turning into an obscure private driveway. See, Hammer v. Combre, 503 So.2d 624 (La.App. 4th Cir. 1987); Robert v. Albarado, 509 So.2d 575 (La.App. 3rd Cir.), writ denied, 510 So.2d 378 (La.1987).
Weighing all factors involved in this accident, we assign 25% of the fault (rather than 75%) to the defendant. The plaintiff is accordingly assessed with 75% of the requisite fault.

QUANTUM
By specification of error number four, defendant contends that the trial court erred in awarding excessive general damages to the plaintiff. The trial court assessed the plaintiff's general damages at $30,000.
Before an appellate court will alter the quantum of a trial court's award, the record must clearly reveal an abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). A trier of fact has abused its much discretion only when the award is so excessively high or low that it shocks the conscience of the reviewing court such that it is compelled to correct the award. Hanzy v. Sam, 385 So.2d 355 (La.App. 1st Cir.), writ denied, 386 So.2d 357 (La.1980).
The plaintiff was taken to the emergency room following the accident. She was diagnosed with a moderate severe cervical strain, a significant contusion and scalp laceration, and a contusion to the left knee; suffered from a mild cerebral concussion; had to wear a soft cervical collar to support her head; underwent physical therapy; and was later diagnosed as having a post-concussion syndrome and possible traumatic neurosis. At the time of trial, three and a half years later, the plaintiff still suffered from the following residual problems which are attributable to the cerebral concussion and the post-concussion syndrome: headaches, memory loss, and nausea.
In our view, an award of $30,000 in general damages, even though on the high side, does not shock our conscience. Finding no abuse of the trial court's great discretion, we will not disturb the award.

DECREE
Therefore, for the above and foregoing reasons, the judgment of the trial court apportioning fault is hereby amended. The amount of fault apportioned to the plaintiff is increased from 25% to 75%, and the amount of fault apportioned to the defendant *313 is reduced from 75% to 25%. All sums awarded to the plaintiffs shall be reduced by 75%, the plaintiff's percentage of fault. In all other respects the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiffs-appellees.
AMENDED AND AFFIRMED.
NOTES
[*] Colony Insurance Company was erroneously named as defendant. Presidential Fire and Casualty Company was the proper defendant-insurer and appeared and answered the petition.